Alice Lorraine **NELSON** et al.,
Plaintiffs,

Winifred Brown et al., Intervening
Plaintiffs,

v.

Vera **LIKINS** et al., Defendants.

No. 4–74 Civ. 236.

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 19, 1974.

On Motion for Temporary Stay
Nov. 22, 1974.

Luther A. Granquist, Legal Aid Society, Minneapolis, for plaintiffs & intervening plaintiffs.

Warren Spannaus, Atty. Gen., State of Minn. by Thomas Fabel, Deputy Atty. Gen., St. Paul, Minn., for Commissioner Likins.

**1236**

James Bares, Asst. County Atty., Minneapolis, Minn., for defendant members of Hennepin County Welfare Bd.

## ORDER AND MEMORANDUM

MILES W. LORD, District Judge.

This matter came before the Court on a motion for a preliminary injunction and a motion for class action status on May 23, 1974. On September 5, 1974, this Court allowed certain individuals to intervene as plaintiffs. The addition of these intervenors did not alter the issues in the original action. The named plaintiffs are a mother and son who receive public assistance benefits under the Aid to Families with Dependent Children (AFDC) program. 42 U.S.C. § 601 et seq. and M.S.A. §§ 256.72–256.87. Living with this family is another son who is too old to receive AFDC benefits but, due to a physical impairment, is receiving benefit under the Supplementary Security Income (SSI) program. 42 U.S.C. § 1381 et seq. (1973 Supp.), Minn. Laws 1974, Chap. 487.

The defendants are state officials who have the statutory responsibility of administering the AFDC program in Minnesota. Vera Likins is the head of the Minnesota Department of Public Welfare (MDPW) while the rest are members of the Hennepin County Welfare Board.

Plaintiffs' specific allegation in these two motions is that the defendants are administering a welfare system, a part of which calls for the classification of AFDC families as "shared households" if they reside with an individual who is not an AFDC recipient but an SSI recipient. This classification lowers the AFDC benefit received. Plaintiffs contend that this is in violation of not only their basic constitutionally protected rights but also a specific federal statute. 42 U.S.C. § 602(a)(24).

The genesis of this complaint lies in the implementation by the State of Minnesota of the "flat grant" welfare system. Basically this changed the method of computing a welfare recipient's benefits from the sum of basic allowances for food, clothing, shelter, personal items, etc. that the recipient had to justify; to an amount based on a table of the "historic average" need for AFDC families of certain sizes and types. This table was the result of a state-wide, statistical survey of the historic average needs of AFDC families.

Part of the "flat grant" system is the "shared" household vs. the "unshared" household differentiation. "Shared" means a group that has AFDC and non-AFDC members; "unshared" means a group made up entirely of AFDC recipients.[1] In general, it can be said that "shared" groups receive lower AFDC benefits than "unshared" groups of like size. The defendants' justification for this, and the explanation for this lower historic average need for the shared household, is economies of scale. For example, if a family of two, both AFDC recipients, lived in a dwelling that rented for $100.00 per month, their individual historic average need for shelter would be $50.00 per month. If these two AFDC recipients lived in a household with a non-AFDC recipient, i. e. "shared," their average need for shelter would be $33.33 ($100.00 ÷ 3).

Plaintiffs claim subject matter jurisdiction in this Court under 28 U.S.C. § 1343(3) (1970). While defendants vigorously contest the plaintiffs' constitutional claims, they do not argue that they are either frivolous or devoid of merit. This Court finds them to be arguable at the very least and therefore finds that it has subject matter jurisdiction. Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); Goosby v. Osser, 409 U.S. 512, 93 S.Ct.

---

1. Defendants in their Supplementary Memorandum in Opposition to Plaintiffs' Motion for a Preliminary Injunction and to Allow a Class Action point out a difference between the word "family" and the word "household," the former indicating a blood or kin relationship, the latter an economic relationship.

854, 35 L.Ed.2d 36 (1973). With this initial jurisdictional prerequisite fulfilled, the theory of pendant jurisdiction outlined in United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), allows this Court to reach the statutory question previously mentioned since both claims arise from a common nucleus of operative fact, both would normally be tried at the same time, and to do so would result in substantial judicial economy. Hagans v. Wyman, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

The Court will now turn to the pending motions noting that it is only considering them as they relate to the question of whether or not Minnesota's AFDC program is in accord with 42 U. S.C. § 602(a)(24).

### Motion for Preliminary Injunction

It is hornbook law that the following factors must be considered by this Court as it deliberates over the appropriateness of injunctive relief: plaintiffs' probability of success on the merits; immediacy and irreparability of the harm if the injunction is not granted; the harm that will be suffered by the defendants if the preliminary relief is granted; and the effect of the injunction on the public good.

This Court finds that in this particular situation the loss of money to these AFDC families is immediate and irreparable harm. While the loss of money is normally not considered irreparable, this Court must point out that in this case those affected are not the average citizens but rather those who are in the grip of poverty. The loss to them of a certain sum of money each month is much more of an injury than it is to the average individual. And it is this average individual who is the basis for the rule that the loss of money is not considered irreparable harm. When one adds to this the case of Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L. Ed.2d 662 (1974), that holds that the Eleventh Amendment bars the federal courts from ordering "retroactive benefits" in welfare cases and Commissioner's Policy Bulletin #56 which precludes administrative appeals challenging any aspect of the flat grant system (which may preclude state court action in the area, Jenswold v. St. Louis County Welfare Board, 247 Minn. 60, 65–66, 76 N. W.2d 639 (1956)); the irreparability of the harm becomes even more evident.

There will, of course, be harm to the defendants if this Court should grant the relief requested. The immediate harm would be an increase in administrative work to correct the system. This inconvenience cannot and does not outweigh the rights and the needs of AFDC recipients. It alone cannot be considered as dispositive.

Defendants argue that the granting of plaintiffs' requested relief is impossible,[2] will cause the loss of federal financial participation, will call for increased state funding, or will call for the reintroduction of the old system of grant administration which was prone to error and which would now be subject to H.E.W. fiscal sanctions.

This Court is not persuaded by any of these arguments. The changes that are called for can be implemented within the flat grant system. It seems only to call for the defendants to count the members of a household differently before going to the flat grant table of allowances in calculating the called-for amount of relief. As to the problem of establishing the equivalent of a "non-shared household" grant for a single AFDC recipient, the Court can only say that it is a problem that it expects the experts in the field to solve. The Court cannot solve all problems but it can rely on the expertise and goodwill of those in the State Welfare Department to work out such problems.

There can be no argument that the public good will be served by requiring state agencies to fulfill the statutory mandates of the Congress absent a pos-

---

**2.** *See,* p. 9 of Defendants Memorandum in Opposition.

itive showing to the contrary. Therefore, in this case, this factor and in reality the appropriateness of injunctive relief depends on the factor of probability of success on the merits.

The statute in question, 42 U.S.C. § 602(a)(24), requires a state AFDC program to provide that:

> If an individual is receiving benefits under Title XVI (the SSI program), then, for the period for which such benefits are received, such individual shall not be regarded as a member of a family for purposes of determining the amount of the benefits of the family under this title and his income and resources shall not be counted as income and resources of a family under this title.

Both sides in this controversy have submitted numerous briefs that look at all possible facets of this problem. But this Court notes that the basic issue of whether or not the statute is being complied with is relatively clear. The named plaintiffs may serve as an example: two AFDC recipients and one SSI recipient in a family or household. If the SSI recipient is to be disregarded as § 602(a)(24) contemplates, then the AFDC amount received by Mrs. Nelson should be the historic average amount needed by two AFDC individuals. But it is not. Mrs. Nelson receives a grant of $170.00 per month. If she and her one son were living alone the grant would be $262.00 per month.

This seems to be a clear violation of the statute. It is explained by the Welfare Department by saying that the reason that two AFDC recipients receive less when they are living with an SSI recipient than when they are living alone is that there are economies of scale involved. The rent example mentioned previously is such an economy. But inherent in that explanation is the fact that the non-AFDC recipient must be being considered in some way. If there were no consideration given, the two AFDC recipients would still need $50.00 per month for rent; not $33.33. The need is the same unless you give

some consideration (i. e., that he can contribute) to the SSI recipient, and that is prohibited.

The Court is quick to point out that a slavish following of this principle could cause inequities and harm. Two AFDC recipients living with one or more SSI recipients could have a significantly smaller need than if they were living alone. But the Congress has foreseen this possibility and has promulgated a way in which to correct it. Title XVI, § 1614(f) of the Social Security Act calls for the reduction of the SSI grant to its recipient when the SSI recipient resides in the household of another. It is obvious that Congress wished to insure that the benefits of the economies of scale when an SSI recipient lives with an AFDC recipient or anyone else who contributes to the economic unit would be counter-balanced by an appropriate reduction in the amount of SSI aid received. It is just as obvious that Congress did not intend for a double deduction to take place. As Minnesota operates now, both the AFDC grant and the SSI grant could be diminished.

Defendants have provided this Court with a copy of the case of Taylor v. Lavine, 497 F.2d 1208 (2d Cir. 1974). In the letter accompanying a copy of this case, counsel for defendant said that it discusses the questions of rebuttable presumptions and economies of scale in light of New York's rule, similar to Minnesota, for allocating housing allowances. While the case is distinguishable on its facts and therefore not of a precedential value, the dictum of Judge Oates in dissent does mirror this Court's thinking on the question of economies of scale.

> . . . First, there is a suggestion that an "economy of scale" operates in the sense that the per capita housing cost decreases when there is a lodger. It is nonsense, however, to say that the cost of housing to the recipient family decreases when there is a non-paying lodger. Moreover, an economy of scale does not reduce the total cost of anything, and yet here, where the

recipient family is legally and factually responsible for the total rent bill, the State is providing a *smaller* total allowance although the lodger contributes nothing. An economy of scale would operate only if the lodger were presumed to pay his pro rata share. But such a presumption would be clearly unlawful, as the majority concedes and 45 C.F.R. § 233.90(a) provides. The presence of a lodger is, finally, irrelevant to the rent the family pays. A certain rent is due and payable; if the State reduces the rent allowance, the difference will either be made up out of food budget—literally out of the needy child's mouth—or it will not be made up, resulting in a notice of eviction.

The cases of Barton v. Lavine, No. 24 New York Supreme Court, County of Albany, November 26, 1973, and Barton v. Fahey, No. 22 New York Supreme Court, County of Albany, August 9, 1974, later cases from the same state as *Taylor, supra,* are directly on point with the case at bar and were decided in favor of the plaintiff's position.

The present case highlights the implausibility of the economies of scale argument because the law *requires* that the non-AFDC recipient be considered as not having contributed a pro rata share. While it is tangential to the decision of this case, this Court must note and agree with Judge Oates, that the defense of economies of scale is based on a presumption that the non-AFDC recipient or lodger pays his pro rata share.

This is not a motion for summary judgment and therefore this Court is not called upon to rule that § 602(a)(24) is being violated by the Minnesota "flat grant" welfare system. It is sufficient within the scope of this motion for a preliminary injunction that there is a high probability that plaintiffs will prevail on the merits. The foregoing discussion leads ineluctably to no other conclusion. The high probability of success is present.

Since an injunction must issue the Court takes cognizance of the case of Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), which dictates that in certain circumstances relief in these types of cases is limited to ordering the State to submit a plan that will bring it into compliance with federal law. If the State fails in this regard then the Court can enjoin the further use of federal funds.

The pending case is so factually different than Rosado that it cannot be deemed controlling. The *Rosado* case was one of massive complexity, both legal and factual, as well as one wherein the relief requested threatened the very existence of the state welfare system. The case brought by Mrs. Nelson is one of clear-cut legal issues and one wherein the relief requested can be implemented without severe disruption to the system as a whole. Under such circumstances, injunctive relief calling for the defendants to come into compliance with federal law is appropriate. Boddie v. Wyman, 434 F.2d 1207 (2d Cir. 1970), affd. 402 U.S. 991, 91 S.Ct. 2168, 29 L.Ed.2d 157 (1971).

*Class Action*

While plaintiffs may fulfill all the requirements for a class action, this Court sees no reason for this case to proceed as such. If plaintiffs succeed, the relief granted will have to include a change in the basic policy of the Welfare Department and this will inure to the benefit of the plaintiffs and all others similarly situated. The relief requested by the plaintiffs if granted will be identical regardless of whether or not a class action is maintained. Because no useful purpose for proceeding as a class appears, the motion is denied. Wilcox v. Commerce Bank of Kansas City, 474 F. 2d 336 (10th Cir. 1973). The Court finds the case of Ihrke v. Northern States Power Co., 459 F.2d 566 (8th Cir. 1972), vacated on other grounds, 409 U.S. 815, 93 S.Ct. 66, 34 L.Ed.2d 72 (1972), dispositive on this aspect.

Therefore it is ordered:

1. That the defendants herein, their successors in office, agents, and employees are enjoined from classifying the persons in the group defined above as being in a shared household pursuant to DPW 1973 Policy Bulletin #44 or DPW IMM IV—2227 solely because they reside with a person or persons receiving SSI benefits pursuant to Title XVI of the Social Security Act, as amended; and

2. That the defendants herein, their successors in office, agents and employees shall provide all persons otherwise eligible for AFDC who share a household solely with a person or persons receiving SSI benefits pursuant to Title XVI of the Social Security Act, as amended, with an AFDC grant calculated on the basis of the non-shared household standards set forth in DPW IMM IV—2227; and,

3. That the provisions of paragraph two (2) of this Order shall become effective on December 1, 1974; provided, however, that in the event that customary processing of AFDC checks precludes a change in the amount of AFDC checks to be issued on December 1, 1974 or January 1, 1975 the defendants, their successors in office, agents and employees shall:

(a) issue an additional check for the month of December, 1974 and January, 1975 to all persons entitled to the relief set forth in paragraph two (2) of this Order in an amount equal to the difference between the amount of the check actually issued and the amount to which the recipient is entitled under paragraph two (2) of this Order no later than January 14, 1975, and

4. That the defendant Likins or any other official of the Minnesota Department of Public Welfare shall send a copy of this Court's Order to the county welfare departments of the several counties of the State of Minnesota no later than five (5) days after being served with a copy of this Order and shall include with said copy a directive requiring immediate compliance with paragraphs one (1) through three (3) of this Order; and,

5. That the defendant Likins or any other official of the Minnesota Department of Public Welfare shall no later than fourteen (14) days after being served with a copy of this Order file with the Court and serve on counsel for the plaintiffs a copy of the directive referred to in paragraph four (4) and an affidavit reflecting compliance with the provisions of that paragraph; and,

6. That the defendant Likins, her successor in office, agents and employees, shall

(a) within twenty (20) working days after being served with a copy of this Court's order determine a standard of assistance for one AFDC recipient who resides with a person or persons receiving SSI benefits, which standard shall be calculated on the basis that the SSI recipient or recipients are not regarded as a member of the family for the purpose of determining the amount of the AFDC benefit and shall be calculated without regard to the income and resources of the SSI recipient or recipients, and

(b) provide the Court and counsel for the plaintiffs a report stating this standard of assistance and the basis for calculating it within five (5) days after it is established in accordance with subparagraph (a), *supra*, and,

(c) no later than five (5) days after submission of said report to the Court and counsel for the plaintiffs, send a directive to each of the county welfare boards of the several counties in the State of Minnesota requiring them to provide AFDC in the amount established pursuant to subparagraph 6(a), above, in each case in which one individual eligible for AFDC resides with a recipient or recipients of SSI, and,

(d) forthwith file with the Court and serve on counsel for the plaintiffs an affidavit reflecting compliance with subparagraph 6(c) above, and,

(e) provided, however, nothing in this Order shall be construed to prohibit pay-

ment of an AFDC grant calculated on a "shared household" basis pursuant to IMM IV—2227 in those cases in which one AFDC recipient resides with an SSI recipient or recipients pending compliance by the defendant Likins with the provisions of paragraph 6(a)–(c) of this Order; and,

7. That no bond shall be required; and,

8. That a copy of this order may be served on the defendants and their agents and employees by the United States Marshal or any other person of suitable age and discretion.

It is so ordered.

## ON MOTION FOR TEMPORARY STAY

■ This matter came on before the Court on Friday, November 22, 1974 on the Motion of Defendant Likins for a Temporary Stay of this Court's Order dated November 19, 1974 which, on the authority of 42 U.S.C. § 602(a)(24), ordered the defendants to make certain adjustments in the AFDC grants of those AFDC recipients who share a home with recipients of Supplemental Security Income (SSI) pursuant to 42 U.S.C. § 1381 et seq.

Deputy Attorney General Thomas Fabel appeared for the defendant Likins; Luther A. Granquist appeared on behalf of the plaintiff and the intervening plaintiffs; there was no appearance for the defendant members of the Hennepin County Welfare Board.

The Order which Commissioner Likins seeks to stay held, in essence, that 42 U.S.C. § 602(a)(24) requires that AFDC recipients who share a household solely with a person or persons receiving SSI benefits are entitled to AFDC benefits calculated on the basis of the non-shared household standards set forth in Minnesota Department of Public Welfare Income Maintenance Manual IV—2227 (September 3, 1973) (Exhibit AA to Affidavit of Richard Neuman) rather than the shared-household standards contained therein as is presently being done. The Court's Order in this regard was to become effective December 1, 1974, although an extended period of time was allowed for certain of the required adjustments to be made.

It is the position of the defendant Likins that implementation of the Court's order may ultimately require substantial modification of the AFDC flat grant system including the elimination of the distinction between shared and non-shared households. The defendant Likins suggests that such action might be taken administratively or that the legislature, when it reconvenes, would be asked to modify the existing structure. Commissioner Likins also argued that the additional financial requirements of the Court's order would have to be met within a finite appropriation for the AFDC program.

The Court is unpersuaded by the defendant Likins' contentions. First, the statutory requirements of 42 U.S.C. § 602(a)(24) appear clear to the Court and require the action taken in the order of November 19th. Secondly, the number of AFDC families affected by the Court's order is estimated to be about 500 throughout the State of Minnesota. The largest increase which could be afforded any one of these AFDC families would be $101 per month in the case of an AFDC recipient group of three eligible persons. DPW IMM IV—2227, *supra*. In all other recipient groups the increase occasioned by the Court's order would be less. *Ibid.* Thus an outside estimate of the total additional monthly expenditures occasioned by the Court's order is $50,000. Since the state's share of this amount is approximately 22 percent, the financial burden placed upon the state each month by enforcement of the Order pending appeal would be no more than $11,000.

The Court is not persuaded that this financial burden is sufficient grounds for a stay of the Order which seems clearly required by the Congressional directive. This Court is well aware of the fact that the legislature convenes in January, 1975 and well aware of the

power which the legislature has to effect changes which would be necessitated by the Court's Order. Furthermore, if a restructuring of the AFDC flat grant system should be made, the legislature will be in a position to deal with those issues shortly.

In light of these facts, the burden or hardship placed on the defendant Likins does not weigh heavily in the balance when compared with the hardship which the Court finds would incur to the AFDC recipients entitled to the benefits of the Court's order. While any order for a stay in this action should be conditioned on the ultimate payment to the plaintiffs of benefits withheld pending appeal, the present loss of $80 to $100 per month in AFDC benefits to these recipients is not, in light of the fact that they are now subsisting on low welfare benefits, a loss which in any practical manner could be replaced some months hence should the Commissioner fail to succeed on appeal.

For the reasons stated above, the Motion for a Temporary Stay is

Denied.