Irene HOEHLE, Individually and on behalf of her minor children, Tyrone Hoehle and Wanda Hoehle, and on behalf of other persons similarly situated, Plaintiffs,

v.

Vera LIKINS, Individually and as Commissioner of the Minnesota Department of Public Welfare, et al., Defendants.

No. 4–75 Civ. 284.

United States District Court,
D. Minnesota,
Fourth Division.

Dec. 17, 1975.

Michael R. Fargione, Legal Aid Society, Minneapolis, for plaintiff.

Warren Spannaus, Atty. Gen. of Minn., by Michael R. Saeger, Sp. Asst. Atty. Gen., and Gary W. Flakne, Hennepin County Atty., by James Bares, Asst. County Atty., for defendants.

## MEMORANDUM AND ORDER

ALSOP, District Judge.

The issue before the court is whether the "flat grant" allocation system established by the Minnesota Department of Public Welfare for recipients of Aid to Families with Dependent Children (AFDC) conflicts with 42 U.S.C. § 606(a) and 45 CFR § 233.90(a), the implementing regulation, to the extent that the presence of a non-eligible AFDC individual living in the household results in a decrease in the standard of need without a determination of actual contribution by that individual.

The matter comes before the court upon the motions of the plaintiffs for certification as a class action, preliminary injunction, and summary judgment. Also before the court are the motions of the defendants to dismiss the action based on lack of subject matter jurisdiction and, in the alternative, to grant summary judgment in favor of defendants. On August 19, 1975, the court issued a temporary restraining order enjoining the defendants from computing plaintiffs' AFDC grant on the Family Allowance Schedule for a shared household of three and instead ordering defendants to provide assistance for the plaintiffs according to the Family Allowance Schedule for a non-shared household of three.

In an effort to aid the court in the determination of the issue before it, the parties have submitted extensive briefs and have entered into a stipulation of facts. The stipulation reads as follows:

## A. THE PARTIES.

1. Plaintiff Irene Hoehle is an eligible recipient of Aid to Families With Dependent Children (AFDC) from the Hennepin County Welfare Department on behalf of herself and her minor children, Tyrone and Wanda.

2. Defendant Vera J. Likins is the Commissioner of the Minnesota Department of Public Welfare and is responsible for supervision of the AFDC program in Minnesota.

3. Defendants Richard Hanson, John Derus, Thomas Olson, E. F. Robb, Jr., and Thomas Ticen, are members of the Hennepin County Welfare Board and are responsible for administration of the AFDC program in Hennepin County.

## B. HISTORICAL DEVELOPMENT OF THE AFDC FAMILY ALLOWANCE SCHEDULE.

4. Prior to October 1, 1973, AFDC needs standards in Minnesota were established for itemized categories. These categories included housing, utilities, basic needs (food, clothing, and personal items), and special need items (such as newspapers, laundry, etc.). The sum of an individual recipient's separate need items in each category was his standard of need for AFDC purposes. The amount of a recipient's AFDC grant was the difference between his available income and his standard of need.

5. Prior to October 1, 1973, when AFDC recipients lived with non-recipients, the needs of the AFDC recipients were computed as their *pro rata* share of the household's total needs in each itemized category. For example, an AFDC family of three residing with a fourth individual who was not an AFDC recipient, would be allotted three-fourths of the allowance for housing and other need items. This determination was made solely on the number of non-recipients in the household; the income of the non-recipients and their contribution to the AFDC recipients, if any, made no difference in this determination.

6. On October 1, 1973, the Minnesota Department of Public Welfare changed the method of determining need standards for AFDC recipients. Rather than computing need by totaling separate need categories (as described in paras. 4–5, above), the Department established

a single "AFDC Family Allowance Schedule" which averaged the need standards formerly used. This new system is popularly known as the "flat grant".

7. Defendants state that the "flat grant" standards of need were established by employing a fair statistical average of the needs of AFDC recipients under the AFDC standards used prior to October 1, 1973. The flat grant for shared households was determined by a fair statistical average of needs for AFDC shared households prior to October 1, 1973. Likewise, the flat grant for non-shared households was determined by the fair statistical average of needs for non-shared households. Defendants state that the United States Department of Health, Education and Welfare has reviewed the Minnesota AFDC Family Allowance Schedule and has judged it to be a fair statistical average of needs of recipients under standards used prior to October 1, 1973.

Plaintiffs are without information sufficient to judge the accuracy of defendants' statements, but plaintiffs do not contest these statements and accept them as true for purposes of this litigation.

8. The standards set forth in the current AFDC Family Allowance Schedule represent the fair statistical averages described in Paragraph 7, above, plus increases of 12% in 1973 and 4% in 1975, as enacted by the Minnesota Legislature. The current AFDC Family Allowance Schedule is as follows:

| Number of Eligible Persons in Recipient Unit | Shared Households | Non-Shared Households |
|---|---|---|
| 1 | $ 73 | 136 |
| 2 | 177 | 272 |
| 3 | 225 | 330 |
| 4 | 293 | 385 |
| 5 | 341 | 432 |
| 6 | 396 | 479 |
| 7 | 468 | 526 |
| 8 | 537 | 566 |
| 9 | 589 | 607 |
| 10 | 613 | 641 |
| for each person over 10 add | 24 | 33 |

C. HOW THE AFDC FAMILY ALLOWANCE SCHEDULE WORKS.

9. Every AFDC recipient in Minnesota receives a grant based on the AFDC Family Allowance Schedule set forth in paragraph 8 above. This schedule represents the standard of need for every AFDC family in Minnesota and the maximum grant regularly available to each AFDC family; a recipient may, in addition, receive a supplemental grant for certain special need items.

10. The definitions used for determining "shared" and "non-shared" households are set forth in the AFDC Program Manual, Part V. [Appendix A].

11. The determination of whether an AFDC household is "shared" or "non-shared" is made by the county welfare agencies solely on the basis of the definitions contained in [Appendix A]; the county's determination of household status is appealable to the Commissioner of Public Welfare under the fair hearing provisions of 45 C.F.R. § 205.10 and Minn.Stat. § 256.77 (1974).

12. The classification of AFDC recipients as members of "shared households" is made without regard to the contribution, if any, made to the AFDC recipients by the non-recipients living in the household.

13. The amount of an AFDC recipient's grant is the difference between his needs (determined according to the AFDC Family Allowance Schedule) and his income (determined according to rules and policies set by the United States Department of Health, Education and Welfare, and the Minnesota Department of Public Welfare).

D. THE PLAINTIFF'S AFDC GRANT.

14. Prior to August, 1975, the plaintiff and her minor children lived in Minneapolis and received an AFDC grant based on the standard of need for a "non-shared" household of three persons. The standard of need for a "non-shared" household of three persons is $330 per month.

15. In June, 1975, the plaintiff's son, Eric Driscoll, moved into the plaintiff's home. Eric Driscoll is not eligible for AFDC.

16. In response to Eric Driscoll's move into plaintiff's home, the Hennepin County Welfare Department reclassified plaintiff's household as "shared" and computed their AFDC grant on that basis beginning in August, 1975. The standard of need for a "shared household" of three persons is $225 per month.

17. Plaintiff has an income of $160 per month from Social Security. If plaintiff's AFDC grant were calculated on a "non-shared" household basis, the actual amount of AFDC assistance would be $170 per month; if the grant is calculated on a "shared" household basis, the actual amount of AFDC assistance would be $65 per month.

18. Plaintiff has not appealed the Hennepin County Welfare Department's determination that her household is now "shared" under the provisions described in paragraph 11 of this Stipulation. Plaintiff acknowledges that her household is properly classified as "shared" according to the definitions set forth in [Appendix A].

19. Plaintiff states that Eric Driscoll has been unemployed since moving into her household and that he has not contributed any amount to plaintiff during this time. Eric Driscoll does not receive General Assistance or any other form of public welfare.

Defendants are without information sufficient to judge the accuracy of these statements by plaintiff, but defendants do not contest these statements and accept them as true for purposes of this litigation.

E. MISCELLANEOUS.

20. By stipulating to the above facts, the parties do not abandon the right to submit other facts to the court which they consider relevant to the subject matter of this case, or to document changes in the facts stipulated herein as they occur in the course of this litigation.

Prior to August of 1975, the stipulation relates, plaintiff Irene Hoehle and her two minor children lived in Minneapolis and received an AFDC grant based on the standard of need for a non-shared household of three. In August, plaintiff's son moved into the household causing the Department of Public Welfare to reclassify the household as a shared household of three and causing a corresponding reduction in the AFDC "flat grant" standard of need from $330 to $225 per month.

Plaintiffs initiated this action against the defendants seeking injunctive and declaratory relief. The net effect of the requested relief would be to restore the plaintiffs' AFDC classification to that of a non-shared household of three. Plaintiffs base their request for relief on three theories each sharing a common factual basis, i. e., the plaintiffs' AFDC grant was reduced after a non-recipient moved into the household without determining whether the non-recipient contributed to the expenses of the household. Plaintiffs contend that the "flat grant" system: (1) is an unreasonable and conclusive presumption that added resources are available to the AFDC recipients by the mere presence of the non-AFDC recipient in the home and thereby denies plaintiffs the right to due process of law; (2) is arbitrary and unreasonable in that it establishes a standard of need for plaintiffs that is less than the standard of need of AFDC recipients in non-shared households of similar size and need and thereby denies plaintiffs the right to equal protection of the law; and (3) is inconsistent with the provisions of 45 CFR § 233.90(a) and is therefore invalid under the Supremacy Clause of the United States Constitution.

*Jurisdiction*

Plaintiffs allege subject matter jurisdiction based on 28 U.S.C. § 1343(3) and (4) for the constitutional claims and pendent jurisdiction for the claim of conflict between federal and state regulations. Since the federal district court is a court of limited jurisdiction, it is not

permissible for it to hear and consider the pendent claim of the plaintiff without determining that jurisdiction is otherwise appropriate. *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

■ Jurisdiction over the constitutional claims is appropriate under § 1343(3) only if the court finds that such claims present a substantial constitutional question. *Hagans v. Lavine, supra.* The threshold jurisdictional issue before the court is, therefore, whether the constitutional claims of the plaintiffs are sufficient to present a substantial constitutional question. If so, the court may adjudicate the statutory claims based on the theory of pendent jurisdiction. *Rosada v. Wyman,* 397 U.S. 397, 402–405, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *Hagans v. Lavine,* 415 U.S. at 536, 543, 94 S.Ct. 1372. It is not clear whether a claim of conflict between the federal and state regulation is itself a constitutional question upon which jurisdiction can be based, aside from the theory of pendent jurisdiction. *Hagans v. Lavine, supra,* 415 U.S. at 533–34, n. 5, 94 S.Ct. 1372. This issue need not be reached since the court is satisfied that plaintiffs' complaint presents a constitutional question of sufficient substance to support jurisdiction pursuant to § 1343(3).

■ Section 1343(3) allows this court to assume jurisdiction over cases in which the complaining party seeks to redress a deprivation, under color of State law, of a constitutional right. *Hagans v. Lavine, supra,* 415 U.S. at 538, 94 S.Ct. 1372. The complaint alleges a deprivation of a constitutional right—equal protection of the law—caused by a state regulation which establishes a lower AFDC standard of need for their household as compared to a household of similar size and with similar needs. The court is not persuaded that the State regulation is so patently rational and "free from invidious discrimination" that the complaint raises no substantial constitutional question. *Dandridge v. Williams,* 397 U.S. 471, 487, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Hagans v. Lavine,* supra, 415 U.S. at 539, 541, 94 S.Ct. 1372. In so ruling, the court does not, nor does it intend to, rule on the merits of this or the other constitutional claim of the plaintiffs alleging a violation of due process. The limited purpose for invading this area is to establish that the equal protection claim is not so "frivolous or so insubstantial as to be beyond the jurisdiction of the District Court," *Hagans v. Lavine, supra,* 415 U.S. at 539, 94 S.Ct. at 1380, and the court so rules.

*Statutory Claim*

The Supreme Court case of *Hagans v. Lavine, supra,* is instructive as to the procedure that should be followed after a single-judge district court has ruled that it has subject matter jurisdiction due to a substantial constitutional question; and thus has jurisdiction over the pendent statutory claim. The single-judge district court should first hear the merits of the statutory claim and should not convene a three-judge district court to hear the constitutional claim if the former is dispositive. If it is not dispositive, the single-judge should convene a three-judge district court to hear the merits of the constitutional claim or claims. It is not necessary, however, for the single-judge court to automatically defer to the three-judge court for the initial determinations of jurisdiction and a decision on the merits of the statutory claim. *Id.* at 543–45, 94 S.Ct. 1372. With this outline in mind, the court will address the alleged conflict between federal and state law.

AFDC is a cooperative federal-state public assistance program in which the federal government provides matching funds to the participating states to aid the "needy child . . . who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with" one or more of certain enumerated relatives. 42 U.S.C. § 606(a). *Van Lare v. Hurley,* 421 U.S. 338, 340, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975); *Hagans v. Lavine, supra,* 415 U.S. at 530–31, 94 S.Ct. 1372. In order

to qualify for matching funds from the federal government, states "must operate a program not in conflict with the Social Security Act." *Van Lare v. Hurley, supra,* 421 U.S. at 340, 95 S.Ct. at 1744, *citing Townsend v. Swank,* 404 U.S. 282, 286, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971).

In the instant case plaintiffs claim that the state regulation conflicts with 42 U.S.C. § 606(a) and, more specifically, with 45 CFR § 233.90(a), the implementing regulation, which provides:

> A State plan under title IV–A of the Social Security Act must provide that the determination whether a child has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, or (if the State plan includes such cases) the unemployment of his father, will be made only in relation to the child's natural or adoptive parent, or in relation to the child's stepparent who is ceremonially married to the child's natural or adoptive parent and is legally obligated to support the child under State law of general applicability which requires stepparents to support stepchildren to the same extend [sic] that natural or adoptive parents are required to support their children. Under this requirement, the inclusion in the family, or the presence in the home, of a "substitute parent" or "man-in-the-house" or any individual other than one described in this paragraph is not an acceptable basis for a finding of ineligibility or for assuming the availability of income by the State. In establishing financial eligibility and the amount of the assistance payment, only such net income as is actually available for current use on a regular basis will be considered, and the income only of the parent described in the first sentence of this paragraph will be considered available for children in the household in the absence of proof of actual contributions.

Section 233.90(a) was promulgated by the Department of Health, Education, and Welfare to respond to the holding in the case of *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).[1] In that case, the Supreme Court ruled that an Alabama regulation conflicted with 42 U.S.C. § 606(a) by denying benefits to AFDC children when the mother cohabited with an able-bodied man. The Court held that although states have "considerable latitude in allocating their AFDC resources," *Id.* at 318, 88 S.Ct. at 2134, Alabama could not deny benefits to needy children based on the cohabitation of the mother with an able-bodied man who had no obligation under state law to support the children. *Id.* at 333, 88 S.Ct. 2128.

The federal regulation was later applied in reviewing California law and regulations which required that the available income of a stepfather or a "male person assuming the role of spouse" (Mars) be considered for purposes of determining the needs of the recipient AFDC children within the home. *Lewis v. Martin,* 397 U.S. 552, 554, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970). The suit had been dismissed by a three-judge district court in California without reaching the merits of the claim of conflict between federal and state law. *Id.* at 554, 560, 90 S.Ct. 1282. The Supreme Court remanded the case for further consideration by the district court stating that "[i]n the absence of proof of actual contribution, California may not consider the child's 'resources' to include either the income of a nonadopting stepfather who is not legally obligated to support the child as is a natural parent, or the income of a MARS—whatever the nature of his obligation to support". *Id.* at 559–60, 90 S.Ct. at 1286.

For purposes of the instant case, the heart of § 233.90(a) is the language

---

1. As originally codified, the regulation was numbered 45 CFR § 203.1 and was phrased differently. *Van Lare v. Hurley, supra,* 421 U.S. at 345, n. 5, 95 S.Ct. 1741, *citing, Lewis v. Martin,* 397 U.S. 552, 556, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970).

which states that "[i]n establishing financial eligibility and the amount of the assistant payment . . . the income only of the [legally obligated] parent . . . will be considered available for children in the household in the absence of proof of actual contributions." *See Van Lare v. Hurley, supra,* 421 U.S. at 345, 95 S.Ct. 1741. Section 233.90(a) was recently applied by the Supreme Court in *Van Lare v. Hurley, supra,* to invalidate a New York regulation analogous to the one at bar.

In *Van Lare,* the court analyzed a New York regulation which stated:

> A non-legally responsible relative or unrelated person in the household . . . shall be deemed to be a lodger or boarding lodger. . . . In the event a lodger does not contribute at least $15 per month, the family's shelter allowance including fuel for heating, shall be a pro rata share of the regular allowance. 18 N.Y.C.R.R. § 352.30(d).

The net effect of the regulation for the three petitioners in the *Van Lare* case was a *pro rata* reduction of their shelter allowance as a result of the presence in the household of a non-AFDC recipient who had no legal obligation to support the children. *Id.* at 340, 95 S.Ct. 1741. The court stated:

> Respondents themselves concede in this Court that the regulations are designed so that the lodger will not 'be excused from providing his share of shelter cost.' . . . .
>
> Thus under the New York regulations the nonpaying lodger's mere presence results in a decrease in benefits. Yet the lodger, like the Alabama 'substitute father' or the California 'MARS,' may be contributing nothing to the needy child. *King v. Smith, supra,* and *Lewis v. Martin, supra,* con-

strue the federal law and regulations as barring the States from assuming that nonlegally responsible persons will apply their resources to aid the welfare child. . . . *Id.* at 346–47, 95 S.Ct. at 1747.

In October of 1973, the Minnesota Department of Public Welfare established a single "AFDC Family Allowance Schedule" known as the "flat grant" system. The "flat grant" system set up standards of need based on statistical averages of need levels for shared households and non-shared households. A non-shared household, with some exceptions,[2] is defined as:

> One in which *all* persons in that household are eligible for and receive assistance in one AFDC check. [emphasis in original]. AFDC Program Manual, Part V.

A shared household is defined as:

> One in which one or more eligible persons for the AFDC program lives with and shares the living costs with: (1) one or more non-eligible (AFDC) persons in that household . . . . AFDC Program Manual, Part V.

Based upon a family's classification as a shared or non-shared household, the standard of need is established by the "AFDC Family Allowance Schedule." For the non-shared household, the standard of need, with some upward percentage adjustments provided by the legislature, is the statistical average of itemized needs for a household containing only AFDC recipients based on pre-October 1, 1973, computations. For the shared household, the standard of need, with the same percentage adjustments, is the AFDC recipients' *pro rata* share of the statistical average of itemized needs for a pre-October 1, 1973, household in which both AFDC recipients and non-recipients resided.[3]

---

2. The Minnesota AFDC Program Manual, Part V, sets forth two specific exceptions to the shared household definition. Also, the shared and non-shared definitions are unaffected by the presence of such persons as a foster child, an agency placed or approved housekeeper, an unborn child, and a recipient of Supplementary Security Income pursuant to 42 U.S.C.

§ 1381 *et seq.* The later exception was prompted by the decision of Judge Lord in *Nelson v. Likins,* 389 F.Supp. 1234 (D.Minn. 1974), *aff'd* 510 F.2d 414 (8th Cir. 1975).

3. Items No. 5–7 of the Stipulation provide further illumination.

The plaintiffs' present situation provides an example of the way the "flat grant" system is employed. When plaintiff Irene Hoehle and her two minor children lived alone and were classified as a non-shared household, their standard of need according to the "AFDC Family Allowance Schedule" was $330.00 per month. When Eric, Irene Hoehle's 19 year old son, moved into the household, the Public Welfare Department reclassified the home as a shared household and accordingly lowered their standard of need to $225.00.

Defendants explain that they are not presuming that the non-AFDC recipient is contributing to the AFDC household, but only requiring that "non-recipients pay their own way." Defendant Memorandum, p. 24. They contend that the "AFDC Family Allowance Schedule" is a fair measure of need standards for recipients living in a shared household based upon historic averages.

The court is compelled to reach the inescapable conclusion that the present system of classifying shared and non-shared households without a determination of actual contribution by the non-AFDC recipient to the household conflicts with 45 CFR 233.90(a). The defendants' argument that they are only requiring non-AFDC recipients in the household to pay their own way is another way of saying that the non-recipient pays his *pro rata* share of the household expenses.[4] Such a presumption, based upon the mere presence of the non-legally responsible individual in the household and without a determination of actual contribution, is precisely what the Court struck down in *Van Lare v. Hurley, supra.*

The defendants' argument that the "flat grant" system is a fair statistical average and should be upheld in light of the policy to allow the states latitude in distributing the available AFDC resources is not well-taken in the context of this action. *See generally King v. Smith, supra,* 392 U.S. at 318, 88 S.Ct. 2128. The statistical compilation relied on by the defendants is based on the averaging of pre-October 1, 1973, needs of shared households. "Prior to October 1, 1973, when AFDC recipients lived with non-recipients, the needs of the AFDC recipients were computed as their *pro rata* share of the household's total needs in each itemized category. For example, an AFDC family of three residing with a fourth individual who was not an AFDC recipient, would be allotted three-fourths of the allowance for housing and other need items. . . ." Stipulation item no. 5. The statistical averaging of the pre-October 1, 1973, needs of shared households does, in the court's opinion, nothing more than carry forward the former presumption of contribution on the part of the non-recipient and is clearly in conflict with the federal regulation. The court acknowledges that defendants have great latitude in allocating the resources available for AFDC programs, but that latitude does not permit the state to operate a system which presumes financial contribution by one not legally obligated without a determination of actual contribution. *King v. Smith, supra,* 392 U.S. at 333, 88 S.Ct. 2128; *Van Lare v. Hurley, supra.*[5]

The effect of the New York regulations in *Van Lare v. Hurley, supra,* was that a family of four receiving a shelter allowance of $150 would have that allowance reduced to $120 upon admitting a non-recipient into the household who did not contribute at least $15 per month. This procedure was for the purpose of assuring that the non-recipient provided "his share of shelter cost." *Id.* 421 U.S. at 1747, 95 S.Ct. 1741 *quoting,* Opposition to Petition for Writ of Certiorari, at

---

4. For a discussion of the "economics of scale" argument, see *Nelson v. Likins, supra,* 389 F.Supp. at 1236, 1238–39.

5. Defendants cite *Houston Welfare Rights Organization Inc. v. Vowell,* 391 F.Supp. 223 (S.D.Tex.1975), for the proposition that a similar prorating of shelter and utility expenses was held to be a proper exercise of the States authority in that case. However, *Vowell,* was decided prior to *Van Lare v. Hurley, supra,* and in part relied on *Taylor v. Lavine,* 497 F.2d 1208 (2d Cir. 1974), the circuit court opinion reversed by the decision in *Van Lare.*

9. The Supreme Court invalidated this regulation. *Id.*

In the present case plaintiffs were receiving AFDC benefits based on a standard of need of $330 per month for a non-shared household of three. When the non-recipient moved into the household it was reclassified as shared and the standard of need reduced to $225 per month without an assessment of actual contribution. The court can find little meaningful difference between the ultimate effect of this regulation and the New York regulation. Both presume contribution to the household by a non-recipient of a *pro rata* share of expenses.

The court is mindful of the effort of the Minnesota Department of Public Welfare to provide a fair program of public assistance through AFDC. It is not the intent of this decision to cause the abandonment of the "flat grant" system or to remodel the system for the State of Minnesota. The exact nature of the changes required by this decision are left to the expertise of the Department of Public Welfare. The result of those changes should be that the defendants will not reduce the AFDC benefits of plaintiffs and other AFDC households based upon the mere presence of a non-legally obligated non-recipient in the household absent proof of actual contributions by the non-recipient and any reduction thereafter shall be only to the extent of such actual contributions.[6]

*Class Action*

■ The plaintiffs have moved the court for certification of this case as a class action pursuant to Rule 23(a) and (b)(2) of the Fed.R.Civ.P. The proposed class includes:

all persons in Hennepin County and throughout the State of Minnesota who receive AFDC grants and whose AFDC grants have been or will be reduced because the AFDC recipients

are classified as a "shared household" without any prior determination of the actual contributions, if any, being made to the AFDC recipients by an individual sharing the household but not included on the AFDC grant.

The court is of the opinion that while all requirements for a class action may have been fulfilled, a class action is not necessary in this case. The requested relief, and the relief which the court will order as a result of its grant of summary judgment, will cause a change in the method of household classification which will inure to the benefit of the plaintiffs and members of the proposed class. Because the relief will be identical and will benefit the proposed class regardless of whether the action is certified as a class action, the court denies certification. *See Nelson v. Likins*, 389 F.Supp. 1234, 1239 (D.Minn.1974), *aff'd*, 510 F.2d 414 (8th Cir. 1975); *Ihrke v. Northern States Power Co.*, 459 F.2d 566, 572 (8th Cir. 1972), *vacated on other grounds*, 409 U.S. 815, 93 S.Ct. 66, 34 L.Ed.2d 72 (1972).

Upon the foregoing,

It is ordered that plaintiffs' motion for summary judgment be and the same hereby is granted as follows:

1. Declaring that the provisions of the AFDC Program Manual of the Minnesota Department of Public Welfare are inconsistent with the provisions of 45 CFR § 233.90 and therefore invalid insofar as they are applied to classify as shared households the households of plaintiffs and other AFDC recipients who reside with non-legally obligated individuals not eligible for AFDC absent proof of actual contributions by the non-legally obligated non-recipients.

2. Enjoining the defendants, herein, their successors in office, agents and employees, and persons in active concert or participation with them,

---

6. As part of the order for judgment the court will issue an injunction against the defendants enjoining them from reducing the benefits of plaintiffs and other AFDC households without proof of actual contributions by the non-recipient. The court is of the opinion that an in-

junction of this nature is an appropriate form of remedy in this proceeding. *Compare, King v. Smith, supra,* and *Nelson v. Likins, supra,* 389 F.Supp. at 1239, *with Rosada v. Wyman, supra,* 397 U.S. at 420–422, 90 S.Ct. 1207.

from reducing the AFDC benefits of plaintiffs and other AFDC households based upon the mere presence of a non-legally obligated non-recipient in the household absent proof of actual contributions by the non-recipient and any reduction thereafter shall be only to the extent of such actual contributions.

3. Providing that nothing in the judgment or order shall prevent the defendants, herein, their successors in office, agents and employees, and persons in active concert or participation with them, from making any otherwise lawful adjustment in the standards of need set forth in the AFDC Family Allowance Schedule of the Minnesota Public Welfare AFDC Program Manual.

4. Providing that nothing in the judgment or order shall prevent the defendants, herein, their successors in office, agents and employees, and persons in active concert or participation with them, from altering the structure of said AFDC Family Allowance Schedule in any lawful manner.

## APPENDIX A

| Minn. Dept. of Public Welfare AFDC PROGRAM MANUAL | Subject: AFDC FAMILY ALLOWANCE | Date Revised March 27, 1975 |
|---|---|---|

| | |
|---|---|
| AFDC ASSISTANCE ALLOWANCE | The statewide AFDC assistance allowance is an inclusive amount established for each eligible family unit. It is based on the number of eligible persons for AFDC in a family living in either a shared or non-shared household. The AFDC Assistance Allowance is Minnesota's standard of need by which eligibility and the individual grant are determined. |
| Definition—Eligible Person | Person or persons in the household who are eligible for and receive assistance in the AFDC program. |
| | The needs of only one caretaker in an AFDC family, in addition to the dependent child or children, may be included in an AFDC budget unless eligibility exists because of parental incapacity or an unemployed father. |
| Definition—Non-Shared Household | One in which all persons in that household are eligible for and receive assistance in one AFDC check. |
| | Exceptions: There are two exceptions which are non-shared households: |
| | If there are two or more groups of children living with one recipient, such as children and grandchildren, all allowances must be made in one grant unless allowances are being paid by more than one county. Care must be taken in figuring the budget to insure that the budgetary needs of the applying relatives are included only once. |

- If the only additional person in the household is a boarder (meals only) it is non-shared.

Definition—Shared Household

One in which one or more eligible persons for the AFDC program lives with and shares the living costs with: (1) one or more non-eligible (AFDC) persons in that household, or (2) one or more eligible (AFDC) persons receiving assistance as a separate payment unit.

1) Roomer is a shared household
2) Boarder and roomer is a shared household

NOTE: Household type (shared or non-shared) is not affected by:

- *The placement of a foster child by a licensed child placing agency.*
- *The presence of an agency placed or approved homemaker housekeeper, or live in attendant.*
- *The presence of an unborn.*
- *The presence of an SSI recipient.*

Examples: *A pregnant woman, one child, living independently, would be considered as living in a non-shared household.*

*A pregnant woman, two children, living with one or more persons not included in the grant would be considered as living in a shared household.*

*An AFDC family (mother and three children) has a foster child placed with them. The household remains non-shared.*

*An AFDC family (mother and two children) plus an aunt who is not included in the grant have a foster child placed with them. The household remains shared.*