Marie JENKINS et al., Plaintiffs,

v.

Thomas W. GEORGES, Jr., et al.,
Defendants.

Civ. A. No. 69–1010.

United States District Court,
W. D. Pennsylvania.

Oct. 27, 1969.

Ronald E. Wilson, Neighborhood Legal Services Ass'n, Pittsburgh, Pa., for plaintiffs.

Joseph P. Work, Deputy Atty. Gen., for defendants.

Before ALDISERT, Circuit Judge, and GOURLEY and SORG, District Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

Pursuant to its program of Aid to Families with Dependent Children (AFDC), the Pennsylvania Department of Welfare has adopted Regulation 3211.5 which establishes a separate classification for dependent children living with non-legally responsible adults who are not welfare applicants. Recipients falling within this classification may receive assistance only under a special allowance schedule set forth in Regulation 3265. Compared with the otherwise applicable schedule in Regulation 3264, this schedule substantially reduces the maximum assistance that can be received, on the theory that at least part of the "substitute parent's" income is available to the child.

Seeking declaratory and injunctive relief, plaintiffs attack these regulations as violative of the equal protection clause of the Constitution and as incompatible with the policies of the Social Security Act, 42 U.S.C. §§ 601–609, and the binding regulations of the Department of Health, Education and Welfare, 45 C.F. R. § 203.1(b), 33 Fed.Reg. 11290 (August 8, 1968), 45 C.F.R. § 233.20(A) (3), (11). 34 Fed.Reg. 1395 (January 29, 1969).

■■■ Because plaintiffs present a "sufficiently substantial" challenge to the constitutionality of statewide regulations, this three-judge court is properly convened pursuant to 28 U.S.C. § 2281, King v. Smith, 392 U.S. 309, 312 n. 3, 88 S.Ct. 2128, 20 L.Ed.2d 1188 (1968). Jurisdiction is conferred by 28 U.S.C.A. § 1343(3) and (4). And since this action is brought under the Civil Rights Act, 42 U.S.C. § 1983, we need not pause to consider questions of abstention or exhaustion of administrative remedies, King v. Smith, *supra*, at 312 n. 3, 88 S.Ct. 2128; Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967).

In addition to the individual plaintiffs —the dependent children whose assistance has been reduced and the non-legally responsible adults with whom they reside—two voluntary, unincorporated associations of welfare recipients seek to maintain this action. The Welfare Rights Organization of Allegheny County was formed in 1968 by recipients to assist needy individuals in obtaining welfare grants and to help such persons become aware of and assert their legal rights under the welfare program. WROAC is the coordinating agency for neighborhood welfare organizations in Allegheny County and has approximately 2,000 members. Citizens Against Inadequate Resources was formed in 1966 for the same reasons. CAIR represents more than 200 families.

In Norwalk CORE v. Norwalk Redevelopment Agency, 42 F.R.D. 617, 622 (D.Conn.1967), the local organization of the Congress of Racial Equality and certain tenants' associations were denied standing because they were "not themselves members of the classes whose rights they claim[ed] to be asserting." On appeal, the Second Circuit made this observation:

> We think that the reasons for requiring an individual plaintiff in a class action to be a member of the class do not necessarily preclude an association from representing a class where its *raison d'etre* is to represent the interests of that class.

Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920, 937 (2 Cir. 1968). See also, Smith v. Board of Educ., 365 F.2d 770 (8 Cir. 1966); Scenic Hudson Preservation Confed. v. FPC, 354 F.2d 608 (2 Cir. 1965); Powelton Civic Home Own. Ass'n v. HUD, 284 F. Supp. 809 (E.D.Pa.1968). That both WROAC and CAIR are organized for the purpose of representing the rights of lo-

cal welfare recipients is indisputable. Indeed, we are told that "but for the efforts of WROAC, these [individual] plaintiffs would not have brought suit in this action."

██ It is not necessary however, to decide whether the association plaintiffs have standing, for their presence in this case is not essential to the vindication of rights of persons not immediately before this court. Norwalk CORE v. Norwalk Redevelopment Agency, *supra,* 395 F.2d at 937.

WROAC and CAIR have attempted to join in this action apparently because their membership includes recipients in all three categories of the 3211.5 classification: (1) dependent child living with a non-applicant relative; (2) dependent child living with his non-applicant parent and step-parent; (3) dependent child and mother living with a non-applicant person assuming the role of spouse. The individual plaintiffs all fall within category (1).

We believe, however, that the individual plaintiffs are proper parties to maintain a class action on behalf of all welfare recipients in the 3211.5 classification. The entire classification, including all three categories, is based solely on one criterion: that the applicant or recipient is living with a non-applicant person who does not receive assistance and who is not legally responsible for support of the child. All such recipients are eligible for only that quantum of assistance provided by the reduced allowance schedule. Persons in categories (2) and (3) are treated exactly the same as those in category (1). We find that the individual plaintiffs may prosecute this suit as a class action on behalf of all persons receiving benefits under Pennsylvania Regulations 3211.5 and 3265. The requirements of Fed.R.Civ.Pro. 23 are satisfied.

The difference in allowances under schedules 3265 and 3264 can best be appreciated by comparing the following tables:

3264 MAXIMUM TOTAL ALLOWANCES FOR COMMON ITEMS BY NUMBER OF PERSONS IN THE ASSISTANCE UNIT

| No. of Persons in Assistance Unit | | | | | | For each add. person |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | |
| $119 | $182 | $222 | $262 | $300 | $332 | $40 |

3265 TOTAL ALLOWANCES FOR CERTAIN MINOR DEPENDENT CHILDREN AND OTHER PERSONS (3211.5)

| No. of Persons in Assistance Unit | | | | | | For each add. person |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | |
| $84 | $128 | $156 | $184 | $210 | $232 | $30 |

The Commonwealth attempts to justify the reduced allowance schedule on the ground that people who live together share expenses for common items such as shelter, food and utilities. Because the non-legally responsible adult who is not receiving assistance contributes to the dependent child's support in the form of a share of these fixed overhead expenses, the child may reasonably be awarded a reduced payment.

The fault we find with the Commonwealth's position is that it assumes, in every case, without investigation, the

availability of the non-recipient's resources for the child. Whether the "substitute parent" is able to help defray any of the increased food costs occasioned by the presence of a minor child in the home is not verified. Whether the "substitute parent" must rent or build additional space, or incur increased utility expenses, or subject the premises to greater deterioration and additional repairs to accommodate the child is not open to factual inquiry. In short, whether the non-recipient can or does actually contribute to the child's support is immaterial under the Pennsylvania schema. Its regulations convert a factual possibility into an assumption of law. This it may not do.

Although plaintiffs challenge the constitutionality of the regulations as abridging rights secured by the equal protection clause, we do not choose to rest our decision on the constitutional question. Instead, we enjoin the continued operation of the Pennsylvania regulations because they disparage the purpose of AFDC and conflict with HEW regulations which govern state participation in the AFDC program.

The purpose of federal appropriations for AFDC is to encourage "[t]he care of dependent children in their own homes or in the homes of relatives * * * to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence * * *." 42 U.S.C. § 601. By reducing payments to children living with non-legally responsible adults, the Pennsylvania regulations have the effect of discouraging such adults from caring for dependent children; they make it more difficult for the "substitute parent" to maintain the child's family unit.

Moreover, HEW has promulgated a regulation, 45 C.F.R. § 203.1(b), 33 Fed. Reg. 11290, (August 8, 1968), designed to implement the Supreme Court's decision in King v. Smith, *supra*. The section provides:

"The inclusion in the family, or the presence in the home, of a 'substitute parent' or 'man-in-the-house' or any individual other than [one legally obligated to support the child under a state law] * * * is not an acceptable basis for a finding of ineligibility or for assuming the availability of income by the State."

This regulation has been interpreted to declare invalid a Connecticut welfare department regulation which presumed that a stepfather will support his stepchildren. Solman v. Shapiro, 300 F. Supp. 409, 413 (D.Conn.1969).

We hold that the Pennsylvania regulations collide with the clear, unambiguous requirement of § 203.1 because they assume the availability of income from substitute parents who are not obligated under state law to support the child. The HEW regulation does not distinguish among the possible relationships of the substitute parents to the child. The admonishment of the federal directive applies whether the relationship is one of stepfather, relative, or total stranger. The test is simply whether the substitute parent is required by state law to furnish the support; if he is not, then the state may not, solely by virtue of the substitute parent relationship, assume a contribution to the child's support by some presumption of availability of income.

In voiding these Pennsylvania Regulations, we do not suggest that the state may not reduce payments to a dependent child living with a non-recipient if an investigation reveals that the adult does contribute to the child's support. Our holding is simply that such a contribution may not be assumed in every case, as a matter of law.

The parties may submit a proposed order.