Ellen GURLEY et al.

v.

Helene WOHLGEMUTH, Individually and
as Secretary of the Pennsylvania De-
partment of Public Welfare, et al.

Civ. A. No. 74–2704.

United States District Court,
E. D. Pennsylvania.

Nov. 1, 1976.

**1338**

Ellen Josephson, Stephen F. Gold, Community Legal Services, Philadelphia, Pa., for plaintiffs.

Axel A. Shield, II, Asst. Atty. Gen., Philadelphia, Pa., for defendants.

### OPINION AND ORDER

EDWARD R. BECKER, District Judge.

#### I. *Preliminary Statement*

This is a welfare rights case founded upon an allegation of conflict between the Pennsylvania Department of Public Welfare (DPW) Manual and the Federal regulations promulgated under the Social Security Act. Plaintiffs Ellen Gurley and Josephine Gurley are sisters. Ellen and her minor daughter reside in a house in Philadelphia, Pennsylvania with Josephine, and Joseph-

ine's two minor daughters. Both plaintiffs receive assistance under the Aid to Families with Dependent Children program (AFDC), 42 U.S.C. § 601 *et seq.*[1] The defendants are Frank Beal, Secretary of the Pennsylvania Department of Public Welfare; Don Jose Stovall, Executive Director of the Philadelphia County Board of Assistance; and Hester Fitzgerald, District Supervisor of the Tioga District of the Philadelphia County Board of Assistance.

Pursuant to Pennsylvania Department of Public Welfare Manual § 3243,[2] because they occupy the same dwelling unit, plaintiffs and their children are treated as a single assistance unit of five persons for purposes of determining the amount of their monthly AFDC grant. If the sisters and their respective children lived separately, they would, the defendants admit, be treated as two separate assistance units, one with two persons and the other with three. Under Pennsylvania's flat grant welfare system, the size of the increment in assistance as additional members are added to an assistance unit decreases as the unit size increases. Because of this feature of the system, an assistance unit of five persons receives an AFDC grant which is smaller than the total grant received by separate assistance units made up of two and three persons. Thus, the plaintiff Gurley sisters and their children receive a smaller grant because they live together than they would if they lived apart. At one relevant point in the record, for instance, the single grant for an assistance unit of five was $409.[3] The regular grant for an

---

1. The Philadelphia Welfare Rights Organization is also named as a plaintiff. Yvonne and Eunice Cooper and their unnamed children are intervening plaintiffs.

2. D.P.W. Manual § 3243 reads as follows:

 An 'assistance unit' is any group of persons who occupy a common dwelling unit and who are applying for or receiving ADC or GA. (A roomer, or a roomer and boarder, and their dependents with whom they are living are a separate unit.) There is only one assistance unit in a dwelling unit.

 ADC refers to the AFDC program, while GA refers to "General Assistance," a state welfare program.

3. The defendants treat each family in the Gurley assistance unit as a separate grant group and, for that reason, send a separate check to each sister. Josephine has been receiving $307 a month, which is the full grant for an assistance unit of three, while Ellen has been receiving a check for the remainder of the $409 total grant, or $102 a month. The defendants have stated, however, that the total could be divided up differently, referring to D.P.W.Man. § 3251.-1, which deals with the distribution of payments in an assistance unit with more than one grant group. The relevant language reads:

 If there is more than one ADC grant group, the allowances may be divided equally or unequally among the ADC grant groups, as circumstances may indicate or require.

assistance unit of two persons, at the same time, was $247 a month, while the grant for a unit of three was $302 a month. Thus, if the plaintiffs were treated as two separate assistance units, they would have received a total of $549, or $140 more a month than they actually received.

Plaintiffs brought this action pursuant to 42 U.S.C. § 1983, to challenge the reduction in their total grant because they live in the same dwelling unit. They specifically attack the legality and constitutionality of D.P.W.Man. § 3243 under the due process and equal protection clauses of the Fourteenth Amendment, and under the Social Security Act, 42 U.S.C. § 601 et seq., and regulations promulgated thereunder, particularly 45 C.F.R. § 233.90(a).[4] They also assert a First Amendment freedom of association claim. Plaintiffs have asked for class certification.

On September 30, 1975, by agreement of the parties, we certified a class consisting of all persons in Pennsylvania who (1) receive assistance under AFDC, and (2) live in a common dwelling unit where there are two (2) or more specified relatives (as defined in D.P.W. Manual § 3122.2(a), (b), (c)), and where the specified relatives share any of the expenses of the dwelling unit, are responsible for the care, maintenance and education of different dependent children, and

where neither specified relative is a roomer and/or boarder.

We now have before us cross motions for summary judgment and defendants' motion to dismiss for lack of subject matter jurisdiction. As will be seen, we find that plaintiffs have presented substantial constitutional questions so as to confer subject matter jurisdiction upon this Court under 28 U.S.C. § 1343(3). Defendants' motion to dismiss will therefore be denied. On the substantive issues, we agree with plaintiffs that D.P.W. Manual § 3243 conflicts with 45 C.F.R. § 233.90(a) and shall, in accordance with the discussion below, grant their motion for summary judgment and deny defendants'. Under these circumstances, of course, we need not reach the merits of plaintiffs' constitutional contentions or refer them to a three judge court.[5]

II. *Subject Matter Jurisdiction*

██ Plaintiffs assert that we have jurisdiction over the constitutional claims in this § 1983 action under 28 U.S.C. § 1343(3) and (4) and that we have pendent jurisdiction over their claim that D.P.W.Man. § 3243 conflicts with federal regulations. We have subject matter jurisdiction over the constitutional claims under § 1343(3) only if we determine that the claims raise substantial constitutional questions. *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372,

Thus, for instance, Ellen could have received the maximum grant for an assistance unit of two and Josephine, the remainder, or each one could have received a proportionate amount of the grant.

4. 45 C.F.R. § 233.90(a) reads as follows:
 *State plan requirement.* A State plan under title IV–A of the Social Security Act must provide that the determination whether a child has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, or (if the State plan includes such cases) the unemployment of his father, will be made only in relation to the child's stepparent who is ceremonially married to the child's natural or adoptive parent and is legally obligated to support the child under State law of general applicability which requires stepparents to support stepchildren to the same extent that natural or adoptive parents are required to support

their children. Under this requirement, the inclusion in the family, or the presence in the home, of a 'substitute parent' or 'man-in-the-house' or any individual other than one described in this paragraph is not an acceptable basis for a finding of ineligibility or for assuming the availability of income by the State. In establishing financial eligibility and the amount of the assistance payment, only such net income as is actually available for current use on a regular basis will be considered, and the income only of the parent described in the first sentence of this paragraph will be considered available for children in the household in the absence of proof of actual contributions.

5. The Three-Judge Court Amendments (Pub.L. No. 94–381, August 12, 1976), which abolished most three-judge jurisdiction, do not, by their terms, apply to any action (such as this one) begun before their passage. *Id.*, at § 7.

39 L.Ed.2d 577 (1974).[6] If we so find, then we also have jurisdiction over the statutory claims based on the doctrine of pendent jurisdiction. *Hagans, supra.*

■ The threshold question then is whether plaintiffs have raised a substantial constitutional question. The standard for making this determination was reviewed in detail by the Supreme Court in *Hagans.* The language in *Hagans* which is perhaps most helpful to a district court faced with this issue is excerpted from *Ex parte Poresky,* 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933). The Court there stated that jurisdiction shall be exercised unless the constitutional issue presented is:

> plainly unsubstantial, either because it is 'obviously without merit' or because 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.'

290 U.S. at 32, 54 S.Ct. at 4. The Third Circuit recently stated that "A claim is sufficient to confer . . . jurisdiction . . . it if is not 'wholly insubstantial' or 'wholly frivolous'." *Williams v. Wohlgemuth,* 540 F.2d 163 at 166 (1976). Further, the mere fact that constitutional claims may be "doubtful" or "of questionable merit" by no means renders them "insubstantial" for § 1343 jurisdictional purposes. *Goosby v. Osser,* 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973). As defendants conceded in one of their briefs, "[t]he test for substantiality obviously favors a plaintiff." [7]

Plaintiffs rely primarily upon their equal protection claim as support for the exercise of subject matter jurisdiction here.[8] They assert, essentially, that Pa.D.P.W.Man. § 3243 results in the unconstitutional classification of Pennsylvania AFDC recipient families into two separate groups for the purpose of determining the size of the monthly grant they receive: (1) AFDC families living in separate dwelling units, AFDC families living with a non-public assistance family and AFDC families living as roomers and boarders in the household of another AFDC family,[9] all of which receive the flat grant allowance for a family unit of their size; and (2) AFDC families living in a common dwelling unit with another AFDC family (not as roomers or boarders), which must share a single flat grant.

Defendants submit that plaintiffs' equal protection claim is insufficient for purposes of jurisdiction because of the principle that states have wide discretion in setting the standard of need and in determining the level of benefits they will pay to AFDC recipients. But this argument does not prove enough and contains several fatal flaws. First, the analysis in large part does not controvert plaintiffs' claim under the equal protection clause. The cases cited by defendants, including *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), *Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), and *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) deal with a multitude

---

**6.** Plaintiffs also contend that we have jurisdiction over their claim of conflict between the state regulation and the federal regulation under 28 U.S.C. § 1343(3) and (4), even if a substantial constitutional question is not asserted, relying primarily upon *Blue v. Craig,* 505 F.2d 830 (4th Cir. 1974). They also contend that we have jurisdiction over that claim under 28 U.S.C. § 1331, alleging that over $10,000 is at stake. Because we have found that plaintiffs have alleged a substantial constitutional question, we need not reach these additional (and difficult) jurisdictional contentions.

**7.** Defendants' Brief in Further Support of Their Motion to Dismiss, at 3.

**8.** Plaintiffs also claim that D.P.W.Man. § 3243 violates the due process clause of the Fourteenth Amendment because the terms "roomer and boarder," as used in that section are vague. Moreover, they have asserted that the regulation violates the plaintiffs' First Amendment rights to privacy and freedom of association. In view of our finding of subject matter jurisdiction founded upon the equal protection claim, it is unnecessary to determine whether either of these claims raises a substantial constitutional question.

**9.** *See* D.P.W.Man. § 3243, note 2 *supra.*

of complex and important statutory and constitutional issues. None of them, however, confront the question of the appropriate application of the equal protection clause in the field of social welfare law. Plaintiffs do not challenge, on equal protection grounds, the simple right of Pennsylvania to set a benefit level for AFDC recipients. What plaintiffs do challenge, pursuant to the Equal Protection Clause, is the right of defendants to treat what they allege to be similarly situated classes of AFDC recipients differently.

The only case cited by defendants which is close to the point is *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). However, even *Dandridge* stops short of rendering plaintiffs' complaint "plainly insubstantial" in the sense contemplated by *Hagans, supra,* and *Goosby, supra,* for it is readily distinguishable from the instant case. *Dandridge* involved the state's discretion to set the level of the AFDC grant for a traditional, nuclear family, where the parents were responsible for the support of all of the children. The relevant AFDC unit in *Dandridge* was thus quite unlike the polyglot households with several separate and distinct nuclear families which are included in plaintiffs' class here. Finally, in evaluating the impact of *Dandridge* on the question of this Court's jurisdiction over the instant case, *Hagans* itself is most instructive. For, in *Hagans,* the constitutional claim which gave rise to § 1343 jurisdiction was an equal protection cause of action. As the Supreme Court held:

> *Dandridge* evinced no intention to suspend the operation of the Equal Protection Clause in the field of social welfare law. State laws and regulations must still "be rationally based and free from invidious discrimination."

*Hagans,* 415 U.S. at 539, 94 S.Ct. at 1380.

The Third Circuit has recently applied the doctrine announced in *Hagans v. Lavine* to find § 1343 jurisdiction in a case which alleged that Pennsylvania's medical assistance regulations governing abortions violated the Equal Protection Clause and Title XIX of the Social Security Act. *Doe v. Beal,* 523 F.2d 611 (3d Cir. 1975). And in *Williams v. Wohlgemuth, supra,* the Third Circuit approved Judge Broderick's determination that an allegation that Pennsylvania's emergency assistance program violated the equal protection clause presented a substantial constitutional question. See also *Hoehle v. Likins,* 405 F.Supp. 1167 (D.Minn.1975). Applying the standards we have outlined to plaintiffs' claim, we cannot conclude that the classifications created by D.P.W.Man. § 3243 are "so unquestionably rational that the constitutional challenge is wholly insubstantial." *Williams,* at 166.

■ If we were to reach the merits of plaintiffs' constitutional claims, we would have to find a rational basis upon which to uphold the classification. The question thus presented has not been passed upon and hence is not one whose "unsoundness . . . clearly results from the previous decisions of [the Supreme Court] . . ." *Ex parte Poresky,* 290 U.S. at 32, 54 S.Ct. at 4. We therefore find that we have subject matter jurisdiction over this case, and will deny defendants' motion to dismiss.

■ In *Hagans,* the Supreme Court specified the procedures to be followed by the district court when a state statute or regulation is challenged on both statutory and constitutional grounds. *Hagans* provides that if, as is the case here, the single district judge determines that there is subject matter jurisdiction, then he or she may hear the pendent claim that state regulations are invalid because they conflict with federal law. If the single judge rejects the statutory claim, a three-judge court must then be called to consider the constitutional questions.[10] After an explication of the record before us on the cross motions for summary judgment we will thus proceed to a consideration of plaintiffs' pendent statutory claim.

---

10. See n. 5, *supra.*

III. *The Undisputed Facts of Record* [11]

A. *The Pennsylvania Flat Grant Scheme*

On April 1, 1974, pursuant to Pa.D.P.W. Man. § 3210, Pennsylvania's Department of Public Welfare adopted a flat grant standard under which the dollar amount of an assistance unit's grant is not based on the actual needs of a given recipient group, but rather on an officially designated level of need for all Pennsylvania recipient groups of the same size (adjusted by county for variations in the cost of living).[12] Under this system, an assistance unit's actual needs and expenses have no impact on their grant. A recipient family may spend its flat grant as it wishes so long as it is not to the detriment of the children. If, through wise budgeting, an assistance unit is able to satisfy its basic needs for an amount less than its grant, it may retain the savings or spend them as it desires. The assistance unit's grant is not reduced if, for instance, it is able to live rent-free or economize on its food bill by planting a vegetable garden.

Under this "flat grant" system, as assistance units get larger, the marginal percentage increase in the amount of their flat grant decreases. For example, in Philadelphia, at one relevant time, assistance units of from one to five persons received the following monthly grants regardless of their particular situation:

| Assistance Unit Size | Monthly Grant [13] | % Increase |
|---|---|---|
| 1 | $164 | – |
| 2 | $247 | 50% |
| 3 | $302 | 22% |
| 4 | $360 | 19% |
| 5 | $409 | 13% |

The practical result of this progression is that if everyone living in a given household is considered to comprise a single assistance unit, the total AFDC grant going to the household will be considerably less than if the household were determined to contain two or more assistance units. This is the situation of plaintiffs. Because assistance unit size determines grant size, D.P.W.Man. § 3243 which, as we have explained, defines "assistance unit," is a particularly important part of the flat grant system.

The state has established the above payment scale because it believes that economies of sale are achieved as unit size increases. Defendants acknowledge, however, that no economies of scale are achieved if persons do not, in fact, pool their income. As the system is now organized, defendants do not make a factual inquiry into whether members of an assistance unit composed of several separate families are actually sharing their income and resources and thus are actually achieving these economies of scale.[13a]

B. *The Situation of the (Plaintiff) Gurleys*

The named plaintiffs (and the members of the class) are all heads of families who receive grants under the AFDC program. Plaintiffs Ellen and Josephine Gurley, are sisters who, with their children, live together in a house in North Philadelphia which is owned by Josephine.[14] Ellen is the specified relative for purposes of the AFDC program for her child, Cheryl Gurley, age 3; and Josephine is the specified relative for her two children, Loriann and Cynthia Gur-

11. The record before us on the summary judgment motions consists of responses to sets of interrogatories by both sides, the depositions of various state welfare officials, and facts stipulated to by plaintiffs and defendants.

12. The relevant part of § 3210 reads:
The Department's allowances recognize certain amounts by family size that persons require to meet basic living requirements. The family size allowances take into account costs for food, clothing, incidentals, shelter and utilities.

13. These amounts are, of course, reduced by the amount of income available to the unit in accordance with D.P.W.Man. § 3234.

13a. The dollar amount of the flat grant that a given family receives is derived from the "Woodbury Standard," which was developed by the Woodbury Committee in the 1950's to serve as a standard of living which would reflect a minimum standard of health and decency for needy families. It is not clear from existing records how the current payment scale was derived from the Woodbury Standard.

14. She is paying off a mortgage.

ley, ages 13 and 16.[15] Because the two Gurley families occupy a common dwelling unit and neither has been determined by defendants to be the roomer or boarder of the other, the defendants have concluded that they constitute a single assistance unit of five persons. However, because there are two separate families and each plaintiff sister cares for different children, defendants have determined that each family constitutes a separate grant group.[16] As a result, each family receives a separate check. Although they do not have a legal responsibility to support each other, the Gurleys admit that they share certain expenses.[17] However, the defendants have never determined the extent to which they share expenses or to which the members of one family benefit from the AFDC payment received by the other. The Gurleys in 1974 requested that the defendants reclassify them into two separate assistance units, but the request was denied. Both of the Gurley families wish to continue to live in the same common dwelling unit, while maintaining separate family identities and responsibilities.

## IV. The Conflict Between D.P.W.Man. § 3243 and 45 C.F.R. § 233.90

Plaintiffs assert that D.P.W.Man. § 3243 violates 45 C.F.R. § 233.90 because the state's application of the principle of economies of scale in establishing the level of benefits to assistance units containing two or more AFDC families constitutes the making of an improper presumption of available income. The relevant part of the federal regulation reads:

> In establishing financial eligibility and the amount of the assistance payment, only such net income as is actually available for current use on a regular basis will be considered, and the income only of the parent described in the first sentence of this paragraph [a natural or adoptive parent or a step-parent with a legal duty of support] will be considered available for children in the household in the absence of proof of actual contributions. (emphasis added).

Plaintiffs reason that in reducing payments made to two or more AFDC families because they have decided to live together, the defendants have considered available as income to one AFDC recipient in the household the AFDC payment to the other, without proof of actual contribution in plain violation of established caselaw precedent. The defendants rejoin that the state has not made such a presumption but rather merely exercised its power within constitutional limitations, see *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), to determine the amount to pay to an assistance unit of a certain size. In so doing, defendants argue, the state may properly take into account economies of scale without coming into conflict with 45 C.F.R. § 233.90(a). The defendants, while *sub silentio* conceding that they have considered available as income to one AFDC recipient in the household the AFDC payment to the other, also contend that the state is not presuming income availability or contribution in this particular case because (1) the plaintiffs admit that they share expenses, and (2) the state knows that the income is available because it sends the AFDC checks to the plaintiffs.

Although we have been unable to find a case reviewing a state regulation having the precise effect of D.P.W.Man. § 3243,

---

**15.** The specified relative is the person whose income may be considered in determining whether the child qualifies for AFDC assistance. See C.F.R. § 233.90(a), note 4 *supra.* See also D.P.W.Man. § 3122.2(a), (b), (c).

**16.** *See* D.P.W.Man. § 3244.

**17.** In her affidavit, Ellen Gurley stated that because her sister received a larger grant "she has to pay for some of the things that my family needs. For example she often has to contribute to the rent that we have to pay as well as the food that we have to buy." The class is also defined in terms of AFDC recipients who "share any of the expenses of the dwelling unit . . . ." *See* note 3 *supra.*

both the Supreme Court and the lower federal courts have often been faced with determining whether state statutes or regulations conflicted with 45 C.F.R. § 233.90(a) or the statute from which it was derived, 42 U.S.C. § 606(a). The Supreme Court first confronted this issue in *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). In that case, the Court found that an Alabama regulation which denied benefits to AFDC children because their mother cohabited with an able-bodied man even though he had no obligation under state law to support them (Alabama presumed his income to be "available"), violated 42 U.S.C. § 606(a) because it denied benefits to children who were qualified to participate in the AFDC program. In response to the holding of *King v. Smith,* the Department of Health, Education and Welfare promulgated the predecessor of 45 C.F.R. § 233.-90(a).

The Supreme Court applied the regulation as originally promulgated in *Lewis v. Martin,* 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970).[18] In that case, the plaintiffs challenged a California law which required that available income of a stepfather or a "male person assuming the role of spouse" ("MARS") be considered in determining the level of need of the AFDC recipient children in the household. The Court held that "[i]n the absence of proof of actual contribution, California may not consider the child's 'resources' to include either the income of a nonadopting stepfather who is not legally obligated to support the child as is a natural parent, or the income of a MARS—whatever the nature of his obligation to support." 397 U.S. at 559–60, 90

S.Ct. at 1286. The Court expressed the policy behind the regulation as follows:

> [A]ny lesser duty of support might merely be a device for lowering welfare benefits without guaranteeing that the child would regularly receive the income *on which the reduction is based.* (emphasis added)

Id.

The Supreme Court applied § 233.90(a) in its present form in *Van Lare v. Hurley,* 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975). The plaintiff there challenged a New York regulation which provided:

> A non-legally responsible relative or unrelated person in the household . . . shall be deemed to be a lodger . . . In the event a lodger does not contribute at least $15 per month, the family's shelter allowance including fuel for heating, shall be a pro rata share of the regular allowance.

421 U.S. at 341–42, 95 S.Ct. at 1745.

In accordance with this regulation, the shelter allowance of the plaintiffs was reduced. The Court, however, found that:

> under the New York regulations the non-paying lodger's mere presence results in a decrease in benefits. Yet the lodger, . . . ., may be contributing nothing to the needy child. *King v. Smith,* supra, and *Lewis v. Martin,* supra, construe the federal law and regulations as barring the States from assuming that nonlegally responsible persons will apply their resources to aid the welfare child. . . ."

421 U.S. at 346–47, 95 S.Ct. at 1747.

Numerous district and circuit courts have invalidated state welfare regulations on the basis of similar analysis.[19]

---

18. The original regulation was 45 C.F.R. § 203.-1. The relevant language can be found in *Lewis,* 397 U.S. at 556, 90 S.Ct. 1282.

19. *See McLaughlin v. Wohlgemuth,* 398 F.Supp. 269 (E.D.Pa.1975) (Fullam, J.) (Pennsylvania Dept. of Welfare may not conclusively presume that the income of a legally responsible relative is available to dependents living in the same dwelling unit); *Reyna v. Vowell,* 470 F.2d 494 (5th Cir. 1972) (under the Social Security Act, Texas cannot presume that the earnings of minors are automatically available

to minor's parents where all of the parties live in the same dwelling unit); *X v. McCorkle,* 333 F.Supp. 1109, (D.N.J.1970) (three judge Court, Adams, J., presiding) aff'd on this point, 404 U.S. 23, 92 S.Ct. 181, 30 L.Ed.2d 143 (1971) (state may not presume stepfather's income available to his step-children for whom he was not legally responsible); *Rosen v. Hursh,* 464 F.2d 731 (8th Cir. 1972) (state cannot presume availability to dependent children of non-legally responsible stepfather's income where they all live in a common dwelling unit); *Marotti v.*

We find two cases of this genre to be particularly helpful. In *Jenkins v. Georges,* 312 F.Supp. 289 (W.D.Pa.1970) (Aldisert, J.), a three judge court found that Pennsylvania regulations which established a lower scale of grant payments for children residing with a non-applicant relative or a MARS violated the predecessor of § 233.-90(a). The Commonwealth's argument was similar to the one made here; i. e., it was based on the assumption of economies of scale. The Court responded as follows:

> The Commonwealth attempts to justify the reduced allowance schedule on the ground that people who live together share expenses for common items such as shelter, food and utilities. Because the non-legally responsible adult who is not receiving assistance contributes to the defendant child's support in the form of a share of these fixed overhead expenses, the child may reasonably be awarded a reduced payment.

> The fault we find with the Commonwealth's position is that it assumes, in every case, without investigation, the availability of the non-recipient's resources for the child. . . . [W]hether the non-recipient can or does actually contribute to the child's support is immaterial under the Pennsylvania schema. Its regulations convert a factual possibility into an assumption of law. This it may not do.

312 F.Supp. at 291.

Similarly, in *Hoehle v. Likins,* 405 F.Supp. 1167 (D.Minn.1975), the court invalidated a similar Minnesota statute and in so doing rejected "[t]he defendants' argument that

the 'flat grant' system is a fair statistical average and should be upheld in light of the policy to allow the states latitude in distributing the available AFDC resources." The *Hoehle* court held that the policy of latitude "does not permit the state to operate a system which presumes financial contribution by one not legally obligated without a determination of actual contribution." 405 F.Supp. at 1174.[20]

We find that the effect of D.P.W.Man. § 3243 on the present plaintiffs is no different from the effect of the regulations in *Lewis, Van Lare, Jenkins,* and *Hoehle* on the plaintiffs therein. In all of these cases: (1) All plaintiffs were properly receiving AFDC assistance pursuant to 42 U.S.C. § 606, and (2) all plaintiffs had their assistance reduced to reflect the income of a third party, regardless of whether that person actually contributed to the maintenance of the AFDC assistance unit. In fact, the only major distinctions between this case and the previous Supreme Court cases which have discussed the AFDC program is the identity of the "third party" whose income results in the reduction of AFDC assistance and the fact that the "third party income" is AFDC income. But these are distinctions without a difference.

The defendants argue that *Lewis, Van Lare, Jenkins,* and *Hoehle* are distinguishable because they all involved regulations which reduced the grant level to an AFDC recipient group when a non-AFDC recipient was added to its household, whereas here the reduction in benefits results from the addition of *AFDC recipients* to the household. Furthermore, the present case is dis-

---

*White,* 342 F.Supp. 823 (D.Ct.1972) (state cannot give lower grant to aid recipient boarding with non-legally responsible relative than to recipient boarding with a non-relative upon presumption that the former alternative will represent a cost savings to the recipient); *Gillard v. Craig,* 331 F.Supp. 587 (W.D.N.C.1971) rehearing denied, 409 U.S. 1119, 93 S.Ct. 892, 34 L.Ed.2d 704 (1972) (state cannot lower AFDC family's grant upon the presumption that one child's income from a support order is available to his brothers and sisters with whom he is living but for whom he is not legally responsible); *Owens v. Parham,* 350 F.Supp.

589 (N.D.Ga.1972) (Georgia's presumptive decrease of aid to recipients living in households with other persons without proof that expenses were shared violates the Social Security Act).

**20.** Defendants note that the Minnesota system also reduced payments to AFDC families sharing dwelling units with other AFDC families, but that the court did not upset that feature of the system. That provision was not, however, attacked by the plaintiffs, and thus, we can draw no conclusion regarding the court's view of the validity of that provision.

tinguishable, they argue, because the defendants are not presuming income, but rather know that the income is received by the household and that the recipients have an obligation to spend their grant for the benefit of their children. Buttressing this latter argument, the defendants refer to the plaintiffs' admissions here that they are sharing certain expenses.

We do not find any of these contentions to be significant. First, we note by way of background that the fact that the persons added to the household are AFDC recipients does not relieve the defendants from the obligation of complying with 45 C.F.R. § 233.90(a). According to *Lewis,* the regulation requires that welfare benefits not be reduced "without guaranteeing that the child would regularly receive the income on which the reduction is based." 397 U.S. at 559, 90 S.Ct. at 1285. The focus of the program is on the child. The fact that two AFDC families decide to live together does not affect the rights of the children under the regulation. Proceeding from this threshold, we address the putative distinctions.

As we have seen, defendants argue that the *regulation* is not violated because the defendants know that the third party income in question is actually received in the household. Receipt of the income, by someone in the household, however, is not enough. The regulation requires proof of *actual* contribution to the welfare of the child. The Court in *Lewis* for instance, was not concerned with whether the MARS had an income to support the child but with whether he was using his income for that purpose in the absence of a legal obligation to do so. The defendants next contend that such an obligation exists here because AFDC recipients are required to spend their grants for the benefit of their children. There is, however, no guarantee that the grant given to one AFDC recipient to satisfy the needs of his or her child, will be used in such a manner that it inures to the benefit of *another* AFDC child, even if they live in the same household. The AFDC specified relative only has an obligation to spend the funds to benefit the children for whom he or she is the specified relative, not to benefit some other AFDC child. The mere fact that the funds are received in the household by another AFDC recipient thus does not satisfy the requirements of the regulation.

We turn then to the significance of the fact that the class is defined in terms of those AFDC recipients who share expenses and that the Gurleys have admitted that they share certain expenses. The defendants overlook, however, that the admissions (hence proof) of sharing on this record are cryptic at best. The sharing admitted may be of a phone bill or a magazine or newspaper subscription. Furthermore, even if sharing of a substantial nature were admitted in a given case (and this, of course, is a class action), we could not, in view of 45 C.F.R. § 233.90(a), uphold a state regulation which results in the reduction of benefits without any previous determination by the state of the amount of the "actual contribution" made in the form of sharing in each household. Such a determination was not made in this case, and there is no vehicle for accomplishing it under the present Pennsylvania procedures. To construe the Pennsylvania regulation as defendants would have us do would render it amorphous and standardless. Thus the existence of some degree of sharing cannot change the result.

The defendants' final contention is that the application of D.P.W.Man. § 3243 to members of the plaintiff class does not violate the federal regulation because they are not assuming the availability of income at all but rather merely taking into account that the amount of money required to satisfy the needs of a child living in a household occupied by a larger number of people is smaller than those of a child living in a smaller group because of economies of scale. The state is thus said to be establishing the level of need, not reducing payments. This argument was explicitly rejected in *Jenkins* on the basis of what we consider to be sound analysis, and we adopt that analysis here. Though we are essen-

tially tracking the *Jenkins* analysis, we add the following additional thoughts.

██ The economies of scale argument is an appealing one, particularly in view of the considerable latitude that the state ought to have in establishing AFDC payment levels. However, as we perceive it, the fundamental fallacy in the economies of scale argument is that, no matter how carefully it is parsed, it is in fact bottomed upon a conclusive presumption that one AFDC family contributed to the support of another AFDC family. Such a presumption (and virtual *ipse dixit*) is impermissible under the extensive authority cited above. As Judge Aldisert explicated in *Jenkins,* the state cannot, because of 45 C.F.R. § 233.-90(a), convert these factual possibilities into assumptions of law. Moreover, as Judge Fullam observed in *McLaughlin v. Wohlgemuth,* 398 F.Supp. 269 (E.D.Pa.1975) in referring to *Van Lare v. Hurley,* supra:

> The rationale of the *Hurley* decision is consistent with the recent trend of authority voiding irrebuttable presumptions when the presumption is not necessarily true in fact and when the state has 'alternative means of making the crucial determination.' *Vlandis v. Kline,* 412 U.S. 441, 452, 93 S.Ct. 2230, 2236, 37 L.Ed.2d 63 (1973) (irrebuttable presumption of non-residency of student invalidated).

398 F.Supp. at 273.

Another perspective helpful to our analysis emanates from the policy of the Social Security Act and regulations to assure that the minimal needs of each child will be satisfied. The state cannot, consistent with the Act and regulations, reduce payments without a guarantee that those minimal needs will in fact be satisfied. Yet the fact is that AFDC recipients added to the household have, under the flat grant system, no obligation to use any particular percentage of their grant for housing or any other item which will benefit the AFDC family with which it is residing. The AFDC family which is able to bunch up with another family to reduce its housing costs or food costs can spend the savings on any other item which is not detrimental to the children, such as additional clothing, toys or movies. The latter expenditures would not necessarily result in a benefit or be an indirect contribution to the children of the other AFDC family. Arguably, in this hypothetical situation it is the second family, the one which is able to live rent free, which has the reduced need and therefore its grant may be reduced without violating the regulation. The state does not, however, reduce the grant of one of the families, but rather reduces the grant to the entire assistance unit.

The situation before us also differs from the usual situation where the state sets different levels of need for families of different sizes. In the latter case, all of the funds received go into the hands of one specified relative who can determine how to use them to maximize the benefit to his or her family through economies of scale. The same is not true where there are two recipients deciding on their own how to spend their share of the total grant. The state cannot assume that the resources are pooled so as to take advantage of economies of scale.

██ We conclude that the application of D.P.W.Man. § 3243 to the members of the plaintiff-class conflicts with 45 C.F.R. 233.-90(a), and that it is therefore invalid under the supremacy clause of the constitution. Accordingly, we enter an order denying the defendants' motions to dismiss and for summary judgment, granting plaintiffs' motion for summary judgment, and entering judgment in plaintiffs' favor, declaring D.P.W. Man. § 3243 invalid, and enjoining the application of D.P.W.Man. § 3243 to the members of the plaintiff class.[21]

---

**21.** Plaintiffs' prayer for damages is barred by the Eleventh Amendment. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).