KOZIARSKI v DEPARTMENT OF SOCIAL SERVICES

Docket No. 77-4438. Submitted June 20, 1978, at Detroit.—Decided
September 21, 1978.

Plaintiffs Diane Koziarski and Tanya Sharon are Aid to Families
with Dependant Children benefit recipients who live together in
a single family residence. The Department of Social Services
refused to allow them a shelter allowance greater than that
permitted for a single family. An administrative hearing was
held at which the administrative law judge upheld the depart-
ment's decision. Plaintiffs' sought judicial review and the
Wayne Circuit Court, George T. Martin, J., affirmed. Plaintiffs
appeal. *Held:*

The rule in Michigan that where two or more families
receiving AFDC benefits live together the maximum shelter
allowance to be granted the families together is the maximum
allowance available to one single family is not violative of
Federal laws and regulations governing the AFDC program and
is not violative of the constitutional requirement of equal
protection of the laws.

Affirmed.

1. PAUPERS—AFDC BENEFITS—SHELTER ALLOWANCES—FEDERAL REGU-
LATIONS.

States have considerable latitude in determining their respective
level of welfare benefits; maximums on the amount of welfare
assistance are permissible due to the finite resources available
and the state interest in maintaining fiscal responsibility.

2. PAUPERS—AFDC BENEFITS—SHELTER ALLOWANCES—TWO FAMILIES
LIVING TOGETHER—FEDERAL REGULATIONS.

The rule in Michigan that where two or more families receiving
AFDC benefits live together the maximum shelter allowance to
be granted the families together is the maximum allowance

REFERENCES FOR POINTS IN HEADNOTES

[1] 79 Am Jur 2d, Welfare Laws § 45.
[2] 79 Am Jur 2d, Welfare Laws § 21.
[3] 79 Am Jur 2d, Welfare Laws § 18.
[4] 79 Am Jur 2d, Welfare Laws §§ 4, 21.

available to one single family is not violative of Federal laws and regulations governing the AFDC program; this rule makes *no presumption of income contribution by one family to the* other.

3. Paupers—Welfare Benefits—Federal Regulations—Uniformity Requirement.

Federal regulations require state welfare disbursements to be uniform, which means that they be applied the same way throughout the state; this regulation does not preclude the state from giving some welfare recipients more money than others, provided it is done on some reasonable and noninvidious basis and is done consistently throughout the state (45 CFR 233.20[a][3][viii]).

4. Constitutional Law—Equal Protection—Paupers—Shelter Allowances—Two Families Living Together.

A classification does not violate the Equal Protection Clause of the Constitution where it has a reasonable basis; the rule that two or more AFDC recipients living together shall receive shelter allowances in the aggregate no more than the maximum shelter allowance for a single family has a reasonable basis and is not violative of the Equal Protection Clause (US Const, Am XIV).

*Gregory L. Carr,* Wayne County Neighborhood Legal Services, Inc., for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Milton I. Firestone, Thomas R. Wheeker,* and *Robert N. Rosenberg,* Assistants Attorney General, for defendant.

Before: D. C. Riley, P. J., and M. F. Cavanagh and B. M. Hensick,* JJ.

D. C. Riley, P.J. This appeal challenges the manner in which "shelter allowances" are distributed by the Michigan Department of Social Ser-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

vices (DSS) in the administration of one segment of this state's public welfare system.[1]

Plaintiffs, Diane Koziarski and Tanya Sharon, single women each having one child, both receive AFDC grants. To gain the various economic benefits of a shared living arrangement, they decided to pool their individual shelter allowances ($110 per month each) and share a four bedroom, single family flat. However, the DSS refused to permit them a shelter allowance greater than the maximum allowed for a single family ($110 in Wayne County). Following an adverse administrative hearing decision, plaintiffs filed an appeal in Wayne County Circuit Court pursuant to MCL 400.37; MSA 16.437. From an order of that court affirming the decision below, they appeal as of right.

Plaintiffs do not challenge the maximum shelter grant limitation itself but rather attack the validity of the state's policy which affords a single shelter allowance to two (or more) AFDC recipients sharing a single place of residence, contending separate allowances should be dispersed for each AFDC family living in the dwelling.

Specifically at issue is Item 322 of the Michigan Assistance Payments Manual, relied upon by the DSS and providing in pertinent part:

"*APPLICATION OF SHELTER ALLOWANCE.* The shelter allowance applies to the house, mobile home, room, or apartment in which the client lives and is

---

[1] Michigan, along with other states, participates in the Federal Aid to Families With Dependent Children program (AFDC), 42 USC 601 *et seq.,* which originated with the Social Security Act of 1935, 49 Stat 620, *as amended,* 42 USC 301 *et seq.* Michigan participates pursuant to the Social Welfare Act, MCL 400.1 *et seq.;* MSA 16.401 *et seq.* It provides grants to AFDC recipients in accordance with such actual needs, but imposes an upper limit on the amount an AFDC recipient can receive for certain portions of their grant, such as a shelter allowance.

granted for the purpose of meeting the cost of a specific living arrangement. *Therefore, only one shelter allowance, up to the state shelter maximum, will be allowed for any living arrangement. When more than one client lives in the same living arrangement, the cost of the shelter requirement, up to the state maximum, may be granted to one client or divided between individual clients* according to the conditions and limitations of this item.

\* \* \*

"*CLIENTS LIVING TOGETHER.* When more than one client lives in the same house, mobile home, room, or apartment, a landlord-tenant relationship will not be recognized. Therefore, one client cannot pay rent to another. The cost of the shelter requirement, up to the state maximum, and the allowances for heating fuel and utilities for the combined eligible group, may be granted to one client or divided among individual clients, in whatever manner is agreeable. \* \* \*

"An exception to this policy may exist when one client occupies a separate, identifiable unit in the home of another client, such as in a duplex or a home that has been remodeled to include multiple living arrangements. If the unit would normally be offered for rent, a shelter allowance, up to the state maximum, may be included in the client's assistance budget." (Emphasis added.)

It is initially alleged that the above rule violates Federal law and regulations governing the AFDC program and thus runs afoul of the Supremacy Clause of the U.S. Constitution, art VI, § 2. Specifically, plaintiffs rely on 45 CFR 233.20(a)(1) and 45 CFR 233.20(a)(3)(viii). The former provides, with respect to all categorical assistance programs including AFDC, the state plan must:

"Provide that the determiniation of need and amount of assistance for all applicants and recipients will be made on an objective and equitable basis and all types of income will be taken into consideration in the same

way except where otherwise specifically authorized by Federal statute."

The later provision requires that the state plan must:

"Provide that payment will be based on the determination of the amount of assistance needed and that, if full individual payments are precluded by maximums or insufficient funds, adjustments will be made by methods applied uniformly statewide."

Plaintiffs maintain present Michigan practice does not conform with these requirements due to the absence of an equitably determined need of two separate families living in one household, and further, that such a policy is not uniformly applied throughout the state. With these contentions we cannot agree. Many cases have recognized that maximums on the amount of welfare assistance are permissible due to the finite resources available and the state interest in maintaining fiscal responsibility. *Dandridge v Williams,* 397 US 471; 90 S Ct 1153; 25 L Ed 2d 491 (1970), stands as primary authority recognizing the considerable latitude afforded the states in determining their respective level of welfare benefits. That case concerned Maryland's AFDC maximum grant allotment of $250 per month. Large families with a proportionately greater need, it was argued, were not treated equitably because of such a restriction. In upholding the grant limitation, the Court stated:

"In King v Smith, *supra,* [392 US 309; 88 S Ct 2128; 20 L Ed 2d 1118 (1968)] we stressed the States' 'undisputed power,' under these provisions of the Social Security Act, 'to set the level of benefits and the standard of need.' *Id.,* at 334. We described the AFDC enterprise as

'a scheme of cooperative federalism,' *id.,* at 316, and noted carefully that '[t]here is no question that States have considerable latitude in allocating their AFDC resources, since each State is free to set its own standard of need and to determine the level of benefits by the amount of funds it devotes to the program.' *Id.,* at 318–319." 397 US at 478.

The *Dandridge* Court further recognized that both the Department of Health, Education and Welfare which administers the Social Security Act, and Congress itself[2] had expressly approved of family grant maximums. *Dandridge, supra,* at 481–482. In this regard, we note that Item 322 has also been approved by HEW, having been submitted as an amendment to the state plan.

In *White v Dep't of Social Services,* 20 Mich App 481; 174 NW2d 315 (1969), this Court upheld a maximum limitation on an AFDC allowance although the amount received fell short of meeting the recipients' actual and reasonable needs, stating that " * * * the amount of assistance granted must be determined in each case according to the

[2] The first section of the AFDC program, 42 USC 601, provides that the act is:

"For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, *as far as practicable under the conditions in such State,* to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection, * * * ." (Emphasis added.)

In the Amendments of 1967, Congress added to 402(a) a subsection (23):

"[The State shall] provide that by July 1, 1969, the amounts used by the State to determine the needs of individuals will have been adjusted to reflect fully changes in living costs since such amounts were established, and *any maximums that the State imposes on the amount of aid paid to families will have been proportionately adjusted."* 42 USC 602(a)(23). (Emphasis added.)

standards prescribed * * * *within the limits estab-
lished by the state department on the basis of
funds available".* (Emphasis added.) 20 Mich App
at 484–485.

The language of *Dandridge* and *White* are analo-
gous to the present case. The state had determined
in Assistance Payments Manual Item 322 that the
level of need of two families sharing the same
residence does not justify giving each a full shelter
allowance. The state has, in effect, set a maximum
shelter allowance for two families sharing the
same living quarters. That maximum is the
amount permitted to one family in the same resi-
dence. Such a policy, despite the fact each family
will receive a proportionately lesser shelter grant
than if they had lived separately and in their own
dwelling, fully comports with the guidelines enun-
ciated in *Dandridge* and *White.* We emphasize it is
not our province to second guess the appropriate-
ness of the manner in which scarce public welfare
funds are disbursed. We are not concerned with
the wisdom of state policy, but whether it con-
forms in this case to federal regulatory require-
ments. As such we find no discrepancy.

Plaintiffs further contend that *Gurley v Wohlge-
muth,* 421 F Supp 1337 (ED Pa, 1976), applies to
the present case. In *Gurley* plaintiff and her sister
had one and two children respectively. Both were
receiving AFDC income. Pennsylvania utilized a
"flat grant" method of calculating assistance pay-
ments with sharply diminishing incremental
amounts for each additional person in the house-
hold. Since they were living together, the assist-
ance grant was calculated on the basis of one
"assistance unit" consisting of five persons rather
than as two separate units (under which plaintiff
would have received greater per capita amounts).

The court ruled that in reducing payments made to two or more AFDC families living together, the state considered available as income to one recipient the AFDC payment to the other without proof of actual contribution, and therefore constituted an improper presumption of available income in violation of Federal regulations. 45 CFR 233.90.

The court further observed that where there was no legal obligation of support, an assumption that income earned by unrelated persons living in the household would be available for support of the child was impermissible. See *Lewis v Martin,* 397 US 552; 90 S Ct 1282; 25 L Ed 2d 561 (1970), *King v Smith,* 392 US 309; 88 S Ct 2128; 20 L Ed 2d 1118 (1968).

We find *Gurley, supra,* distinguishable from the facts at hand. Unlike the flat grant method of assistance in *Gurley,* where the entire welfare grant amount was controlled by a particular living arrangement, Michigan employs a budget process system where specific amounts are given for each of the recipient's needs. Plaintiffs are essentially treated as two families of two persons each and are free to use their separate grants as they see fit. Thus, the only effect of Item 322 relates to their *actual shelter need.* The remainder of their grant remains unaffected, whether they live together or separately. Further, there is no presumption of income contribution for an AFDC family to another. Plaintiffs are cotenants and each is legally obligated to defray one-half the rental obligation. DSS is not required to presume that one plaintiff will use half the shelter allowance to benefit the other as each has incurred a respective legal duty. Plaintiffs' allegation that Item 322 is not uniformly applied in contravention of 45 CFR 233.20(a)(3)(viii) is also without merit. They reason

uniformity is lacking because of their receipt of only one shelter allowance, where, if living separately, they would receive two rental allotments. We interpret the regulation cited as requiring that state welfare disbursements be uniform *(viz.* applied the same way) *throughout each county of the state.* The state may, upon a reasonable and non-invidious basis, give some welfare recipients more money than others, provided they do so in a geographically consistent manner. The shelter standard, thus, is consistently applied statewise as each county is required to follow Item 322.

Plaintiffs' final argument on appeal asserts that Item 322 violates the equal protection clause of the U.S. Constitution by reason of its differential treatment of AFDC families living together and those living apart. *Dandridge v Williams, supra,* reiterates the basic standard applicable to equal protection challenges in the social welfare area:

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley v Natural Carbonic Gas Co.,* 220 U.S. 61, 78. 'The problems of government are practical ones and may justify, if they do not require, rough accomodations— illogical, it may be, and unscientific.' *Metropolis Theatre Co. v. City of Chicago,* 228 U.S. 61, 69–70. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' *McGowan v. Maryland,* 366 U.S. 420, 426." 397 US at 485.

We accept the lower court's finding of several "reasonable bases" supporting the constitutional-

ity of Item 322, to wit, (1) the discouragement of overcrowded living conditions, accompanied by health and social hazards resulting from unrelated individuals living together under a single roof, (2) the elimination of unscrupulous landlords who might seize upon the availability of public funds to encourage multiple occupancy of rental units at an increased profit, and (3) conservation of resources which may be allocated to families totally without shelter. As was recognized in *White v Dep't of Social Services, supra,* the state "has a valid interest in preserving the fiscal integrity of its programs. It may legitimately attempt to limit its expenditures, whether for public assistance, public education, or any other program". *Id.,* at 485, quoting *Shapiro v Thompson,* 394 US 618, 633; 89 S Ct 1322; 22 L Ed 2d 600 (1969).

Plaintiffs' reliance on *United States Dep't of Agriculture v Moreno,* 413 US 528; 93 S Ct 2821; 37 L Ed 2d 782 (1973), is therefore unjustified. In *Moreno* the provision in the Food Stamp Act which excluded from participation in the food stamp program any household containing an individual who is unrelated to any other member of the household was held to create an irrational classification in view of the stated purposes of the act. While the practical effect of Item 322 is to discourage the sharing, by welfare families, of a single residence, defendant here, unlike *Moreno,* provides rational reasons for such a policy.

Affirmed. No costs, a public issue being involved.