NELSON v DEPARTMENT OF SOCIAL SERVICES

Docket No. 53970. Submitted June 3, 1981, at Lansing.—Decided November 17, 1981.

Carol Nelson and others, individually and on behalf of all recipients of day care benefits from the Department of Social Services who were participating in the Independent Education and Training Program, sought, in Ingham Circuit Court, an injunction restraining the Department of Social Services and its director, John T. Dempsey, from terminating their day care benefits. Because of the fiscal status of the state, the Governor, by executive order, transferred the funds earmarked for day care benefits under the Independent Education and Training Program to the general fund. Plaintiffs alleged that they were denied equal protection of the law by the termination of their day care benefits while the day care benefits paid to persons enrolled in other similar educational training programs were continued. Both plaintiffs and defendants moved for summary judgment. Thomas L. Brown, J., denied defendants' motion for summary judgment, granted plaintiffs' motion for summary judgment and permanently enjoined the defendants from terminating the child care benefits paid to plaintiffs, ruling that the termination of plaintiffs' benefits while continuing the same benefits to persons enrolled in similar programs denied plaintiffs equal protection of law. Defendants appeal. *Held:*

1. The standard to be applied in determining whether plaintiffs were denied equal protection of the laws by the classification of the child care benefits paid to them as a class separate and distinct from the child care benefits paid to persons enrolled in other education and training programs is the rational basis test rather than the substantial-relation-to-the-object test, since the plaintiffs' interest in those benefits is not a fundamental interest requiring application of the strict scrutiny test.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 841.
[2] 16A Am Jur 2d, Constitutional Law § 753.
   79 Am Jur 2d, Welfare Laws § 4.
[3] 16A Am Jur 2d, Constitutional Law § 754.
[4] 79 Am Jur 2d, Welfare Laws § 45.

Under the rational basis test, a classification will be deemed to be an unconstitutional denial of equal protection where the classification is essentially arbitrary, that is, where no set of facts will justify the classification. Those challenging the classification bear the burden of showing that the classification is arbitrary.

2. The fact that the other similar programs fostered achievement of basic skills which thereby furthered the goal of bringing as many needy persons as possible to at least a minimal level of employability and those programs were closely monitored and supervised to achieve that goal constitutes a sufficient reason for treating those programs differently from the program in which plaintiffs were enrolled which provided advanced education and was not closely monitored and supervised. A rational basis thereby exists for the separate classification and treatment of the program in which plaintiffs were enrolled and that classification did not deny plaintiffs equal protection of the law.

Reversed.

1. APPEAL — FINDINGS OF FACT — BENCH TRIAL.

An appellate court will set aside the findings of fact of a trial court sitting without a jury when such findings are clearly erroneous; such findings are clearly erroneous where, although there is evidence to support them, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed (GCR 1963, 517.1).

2. CONSTITUTIONAL LAW — EQUAL PROTECTION — RATIONAL BASIS TEST.

Judicial review of an equal protection claim with respect to the termination by the Department of Social Services of child care benefits to persons enrolled in the Independent Education and Training Program involves the application of the rational basis test; under such test, those asserting denial of equal protection must show that the classification scheme used was arbitrary and did not bear a rational relation to the object of the legislation.

3. CONSTITUTIONAL LAW — EQUAL PROTECTION — RATIONAL BASIS TEST.

There exists a rational basis on which the state may treat persons receiving payments for day care under a program which is not closely supervised by state agencies differently from persons receiving similar payments under programs having close supervision by state agencies.

4. SOCIAL SERVICES — STATE EXPENDITURES.
>   The state has a valid interest in preserving the fiscal integrity of
>   its programs and may limit its expenditures for public assis-
>   tance.

*Daniel S. Cooper, P.C.,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Janis Meija* and *Erica Weiss,* Assistants Attorney General, for defendants.

Before: BEASLEY, P.J., and M. J. KELLY and N. A. BAGULEY,* JJ.

N. A. BAGULEY, J. Defendants appeal from a September 30, 1980, circuit court order granting plaintiffs summary judgment pursuant to GCR 1963, 117.3, and permanently enjoining defendants from terminating plaintiffs' day care benefits.

Plaintiffs are enrolled in the Independent Education and Training Program (I E & T) administered by defendant department and are therefore eligible for Title XX day care benefits under the Social Security Act, 42 USC 1397. On May 28, 1980, Governor Milliken signed Executive Order 1980-3 which mandated various reductions in state expenditures because of the state's financial crisis. In particular, one million dollars which had been earmarked to pay for day care benefits to persons eligible for Title XX day care benefits, 1979 PA 110, specifically those enrolled in the I E & T program, were transferred to the unappropriated balance of the state's general fund pursuant to the Governor's authority under Const 1963, art 5, § 20 and 1979 PA 111, § 9. The ceiling amount of federal reimbursements for the state's Title XX expenditures had been surpassed and the state was

---

* Circuit judge, sitting on the Court of Appeals by assignment.

funding all Title XX services with state funds until the end of the fiscal year, September 30, 1980. Funding for day care benefits for five other educational training programs was continued. These programs were: the high school completion program, including GED and ABE; WIN, CETA and Bureau of Rehabilitation sponsored education and training programs; and the Michigan Department of Social Services authorized employment marketing program.

Plaintiffs brought a class action on behalf of all I E & T program participants whose Title XX day care benefits were discontinued, seeking an injunction against the termination of day care benefits. A temporary restraining order was issued and, after a hearing, the trial court refused to dissolve the order. Defendants then moved for summary judgment. The motion was denied, and the trial court by oral opinion permanently enjoined defendants from terminating I E & T child care benefits on the grounds that defendants' actions were without any rational basis and plaintiffs' rights to equal protection of the laws were violated.

In their brief in support of the motion for summary judgment, defendants argued that their eligibility classifications had a reasonable basis because funding day care for participants in high school completion and adult basic education courses furthers achievement of the basic skills necessary to obtain and perform most available jobs, the goal being to bring as many needy persons as possible to at least a minimum level of employability. Defendants stress that they were not arguing that persons with high school degrees are more employable than persons pursuing advanced education or training through independent education or training programs. Defendants also submitted that all

of the programs for which day care benefits continued to be funded were supervised and selective as to both participants and course of study while the I E & T program did not have such controls. The defendants' rationale thus was that supervised programs are more likely to lead to specific employment for the participants.

At the hearing on defendants' motion to dissolve the temporary restraining order, plaintiffs countered in oral argument defendants' contention that the I E & T program had lesser controls than the five programs which were not discontinued. Defendants responded by arguing that the department's only involvement with I E & T program participants was to ascertain whether they were eligible for Title XX services and whether they were enrolled in an accredited institution. Paula Stark, Director of the Office of Employment Development for the Michigan Department of Social Services, testified on behalf of defendants. Stark was in charge of the WIN program, the Department of Employment and Training Employment Marketing Program and the day care program. According to Stark, a person applying for I E & T has to fill out a form indicating that she is going to an accredited school to pursue some goal. The department has no jurisdiction for determining whether the goal is appropriate or will lead to employment, although the recipient must periodically show the department that she is satisfactorily progressing toward her goal.

Stark also testified that the state is accountable for certain performance goals under the WIN program whereby it selects units to participate in the different programs based upon the likelihood that participants will ultimately obtain jobs. The CETA program is also bound by employment goals and

participants are screened. The department's own employment marketing program and the Bureau of Rehabilitation Services training program are monitored according to employment goals. All of the above programs are geared to the time span between the training or education and the eventual employment as well as to the relation of the goal to the eventual employment.

At a subsequent hearing on defendants' motion for a summary judgment, the trial court ruled that there was no reasonable distinction between the class made up of plaintiffs and the class made up of individuals participating in other programs serviced by child care assistance. The court characterized defendants' arguments and proofs concerning the rationale for cutting off plaintiffs' child care benefits as fallacious since it was not reasonable to conclude that the participants in the other five programs would be more employable than plaintiffs. The court concluded that defendants had failed to state a valid defense to the equal protection claim and granted summary judgment in favor of plaintiffs.

The question to be decided here is whether the trial court's findings of fact and conclusions of law with respect to plaintiffs' equal protection claim are clearly erroneous. GCR 1963, 517. A finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed". *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976).

In their respective briefs on appeal, the litigants disagree as to the proper standard for reviewing this equal protection claim. Defendants contend that plaintiffs' equal protection claim must fail if

any state of facts can be reasonably conceived as a rational basis for the governmental classification, citing *Feldman v Dep't of Social Services,* 84 Mich App 103; 269 NW2d 319 (1978), and *Dandridge v Williams,* 397 US 471, 484; 90 S Ct 1153, 1161; 25 L Ed 2d 491, 501 (1970). Plaintiffs would apply the tests summarized in *Alexander v Detroit,* 392 Mich 30, 35-36; 219 NW2d 41 (1974), as follows:

"(1) Are the enactment's classifications based on natural distinguishing characteristics and do they bear a reasonable relationship to the object of the legislation?

"(2) Are all persons of the same class included and affected alike or are immunities or privileges extended to an arbitrary or unreasonable class while denied to others of like kind?" (Citations omitted.)

*Feldman, supra,* involved an equal protection challenge to the denial of an adult foster care license to a facility which had more than six residents over 65 years of age. This Court noted that the interest of the plaintiff in *Feldman* was exclusively of a pecuniary nature and did not rest on either a fundamental constitutional right or on "a classificatory scheme perceived precedentially to be suspect". *Feldman, supra,* 105. This Court, therefore, applied the traditional rational basis test of *Dandridge v Williams, supra, e.g.,* whether any state of facts can reasonably be conceived as a just basis for the legislative classification.

The new or reconstituted equal protection test applied in *Alexander v Detroit, supra,* was dubbed "the fair-and-substantial-relation-to-the-object-of-the-legislation" test or the "means scrutiny" test in *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 670-671; 232 NW2d 636 (1975). The Court then concluded that "the governing rule is one of reason" and that the classification "must

bear a reasonable relation to the object of the legislation". The Court concluded that, "where the challenged statute carves out a discrete exception to a general rule and the statutory exception is no longer experimental, the substantial-relation-to-the-object test should be applied". *Id.,* 671.

In *McAvoy v H B Sherman Co,* 401 Mich 419, 452; 258 NW2d 414 (1977), the Supreme Court cited the equal protection language in *Alexander, supra,* as the test to be applied. The Court also quoted the discussion in *Manistee Bank & Trust Co v McGowan, supra,* 668, concerning the "two tiered" approach to equal protection and the shifting burden of proof:

"If the interest is 'fundamental' or the classification 'suspect', the court applies a 'strict scrutiny' test requiring the state to show a 'compelling' interest which justifies the classification. Rarely have courts sustained legislation subjected to this standard of review.

"Other legislation, principally social and economic, is subjected to review under the traditional equal protection test. The burden is on the person challenging the classification to show that it is without reasonable justification. It has been said that '[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it'. A classification will stand unless it is shown to be 'essentially arbitrary'. Few statutes have been found so wanting in 'rationality' as to fail to satisfy the 'essentially arbitrary' test." *McAvoy v H B Sherman Co, supra,* 453.

It concluded that, since the legislation under scrutiny dealt with property rights and not fundamental rights, the plaintiffs had the burden to show that the classification was arbitrary and did not bear a rational relation to the object of the legislation. Accord, *Smith v Employment Security Comm,* 410 Mich 231, 271; 301 NW2d 285 (1981).

In light of the above discussion, it appears that the traditional rational basis test applies in the instant case and that the burden of showing the nonexistence of such fell upon the plaintiffs. While a legislative classification was not involved here, this Court applied the traditional *Dandridge* rational basis test to a challenge involving the Michigan Department of Social Services' policy concerning the eligibility of welfare recipients for shelter allowances in *Koziarski v Dep't of Social Services,* 86 Mich App 15, 23-24; 272 NW2d 183 (1978), *lv gtd* 406 Mich 970 (1979).

We conclude that the trial court clearly erred in finding that defendants had no rational basis for terminating plaintiffs' child care benefits. The trial court obviously misunderstood the rationale proffered by defendants for terminating the child care subsidies for only those persons involved in the I E & T program while continuing aid to those in the other five programs. Defendants did not rationalize their decision by contending that persons in the other programs would be more employable than plaintiffs at the conclusion of their training and/or education. Rather, defendants contended at the initial hearing on the temporary restraining order and in subsequent arguments on the summary judgment motion that the funding of day care for participants in the other monitored and selective education and job training programs fostered the achievement of basic skills and thereby furthered the goal of bringing as many needy persons as possible to at least a minimal level of employability. The proofs by defendants also tended to show that the programs for which day care assistance was continued were monitored as to employment goals of the curricula and as to the time span between the training or education and the eventual goal.

The rationale offered by defendants comported with the legislative purpose of Title XX benefits under the Federal Social Security Act. Section 1397 of the act authorizes appropriations for the purpose of encouraging states to furnish services directed at several goals, including that of "achieving or maintaining economic self-support to prevent, reduce, or eliminate dependency". 42 USC 1397. Executive Order 1980-3 provided that expenditures were being reduced because actual revenues for the fiscal year would fall below revenue estimates on which the appropriations were based. The state also has a valid interest in preserving the fiscal integrity of its programs and may limit its expenditures for public assistance. *White v Dep't of Social Services*, 20 Mich App 481, 485; 174 NW2d 315 (1969).

Plaintiffs did not carry the burden of proof in showing that there was no rational basis for the state's actions. While several of the named plaintiffs testified to show that they were involved in worthwhile educational pursuits, this testimony did not refute defendants' contention that the state was attempting to allocate the limited resources in a way in which the largest number of social services recipients would be assisted in attaining economic independence.

Reversed.